# FEDERAL TRADE COMMISSION *v.* STANDARD EDUCATION SOCIETY ET AL.

No. 14. Argued October 18, 1937.—Decided November 8, 1937.

 ██

*Assistant Attorney General Jackson,* with whom *Solicitor General Reed* and *Messrs. Hugh B. Cox, Robert L. Stern, W. T. Kelley, Martin A. Morrison,* and *James W. Nichol* were on the brief, for petitioner.

*Mr. Henry Ward Beer* for respondents.

MR. JUSTICE BLACK delivered the opinion of the Court.

Upon application by the Federal Trade Commission this Court granted certiorari to review that part of a decree of the Circuit Court of Appeals for the Second Circuit which modified in part and reversed in part a "cease and desist" order of the Commission. 86 F. (2d) 692. The Commission, after service of a complaint, and extensive hearings, made a finding of facts from the testimony and ordered two corporation respondents, and three individuals controlling these corporations, to desist from certain practices used by respondents in furthering the sale of encyclopedias and other books in interstate commerce. The Commission not only found the practices to be "unfair" but also "false, deceptive and misleading." The court below modified and weakened the Commission's order in material aspects, and the questions here are whether the testimony supported all the findings of the Commission, and whether these findings justified the entire order as against all the respondents.

All "unfair" practices found by the Commission related wholly to methods of sale. The Commission's order against respondents was based, in part, upon the following findings:

114

· That fictitious testimonials and recommendations had been used by respondents; that authorized testimonials and recommendations had been exaggerated and garbled; that authorized testimonials for a "previous work" were later used to further the sale of another "work, quite different in form, in material and in purpose." "For the purpose of selling their publications, Standard Reference Work and New Standard Encyclopedia," respondents advertised "a list headed 'Contributors and Reviewers' and . . . In such list they include many who have not been either contributors or reviewers to either the Standard Reference Work or the New Standard Encyclopedia." Respondents sold "their publications at retail to the public by salesmen on the subscription plan" and in carrying out said plan they represented to prospects that they were selecting a small list of "well connected representative people" in various localities, in order to present them with an "artcraft de luxe edition" of the encyclopedia. Further carrying out respondents' scheme, their agents represented that "they are giving away a set of books; that they are not selling anything; that the books are free; that the books are being given free as an advertising plan . . . that the prospect has been specially selected, and that the only return desired for the gift is permission to use the name of the prospect for advertising purposes and as a reference"; that the "said prospects are paying only for the loose leaf extension service; . . . that the price of $69.50 is a reduced price and that the regular price of the books and the extension service is $150.00, sometimes even as high as $200.00." The statements that the encyclopedia is being given away; that payment is only being made "for the loose leaf extension service"; and that "$69.50 is a reduced price . . . are false, deceptive and misleading, as $69.50 is the regular, standard price" for both the encyclopedia and the loose leaf extension and research privileges.

The Court of Appeals reversed clauses one and three of the Commission's order. These clauses ordered respondents not to represent falsely to purchasers of their publications that the publishing company was giving encyclopedias to them as a gift, and that purchasers were paying only for loose leaf supplements.

The Court of Appeals affirmed clauses two and six of the Commission's order. These clauses ordered respondents not to represent falsely to purchasers that sets of books had "been reserved to be given away free of cost to selected persons" and that the usual price at which respondents' publications are sold is higher than the price "at which they are offered to such purchasers."

It is clear, both from the findings of the Commission, and the testimony upon which they rest, that the practices forbidden in clauses one, two, three and six are all tied together as parts of the same sales plan. As a first step under this plan, salesmen obtained an audience with prospective purchasers by representations made to them that by reason of their prestige and influence they had been selected by the Company to receive a set of books free of costs for advertising purposes. After respondents' agents thus gained an audience by the promise of a free set of books, they then moved forward under the same general sales plan, by falsely representing that the regular price of the loose leaf supplement alone was $69.50, and that the usual price of both books and loose leaf supplements was much in excess of $69.50. The Commission ordered respondents not to engage in carrying out any part of this entire sales plan. However, as the Court of Appeals reversed clauses one and three of the Commission's order, a part of the sales scheme which the Commission condemned as unfair, can yet be carried out by respondents. That is to say—respondents by that reversal, are left free to continue to obtain audiences with prospects and to sell encyclopedias and loose leaf supple-

ments to them, by false representations that the Company gives them a set of encyclopedias free, and that $69.50 paid by them to the Company, is for the loose leaf supplement alone.

In reaching the conclusion that respondents should be left free to engage in that part of the sales scheme prohibited by clauses one and three of the Commission's order, the court below reasoned as follows:

"We cannot take seriously the suggestion that a man who is buying a set of books and a ten years' 'extension service,' will be fatuous enough to be misled by the mere statement that the first are given away, and that he is paying only for the second. . . . Such trivial niceties are too impalpable for practical affairs, they are will-o'-the-wisps, which divert attention from substantial evils."

The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business. Laws are made to protect the trusting as well as the suspicious. The best element of business has long since decided that honesty should govern competitive enterprises, and that the rule of *caveat emptor* should not be relied upon to reward fraud and deception.

The practice of promising free books where no free books were intended to be given, and the practice of deceiving unwary purchasers into the false belief that loose leaf supplements alone sell for $69.50, when in reality both books and supplement regularly sell for $69.50, are practices contrary to decent business standards. To fail to prohibit such evil practices would be to elevate deception in business and to give to it the standing and dignity of truth. It was clearly the practice of respondents through their agents, in accordance with a well matured plan, to mislead customers into the belief that they

were given an encyclopedia, and that they paid only for the loose leaf supplement. That representations were made justifying this belief; that the plan was outlined in letters going directly from the companies; that men and women were deceived by them—there can be little doubt. Certainly the Commission was justified from the evidence in finding that customers were misled. Testimony in the record from citizens of ten States—teachers, doctors, college professors, club women, business men—proves beyond doubt that the practice was not only the commonly accepted sales method for respondents' encyclopedias, but that it successfully deceived and deluded its victims.

The courts do not have a right to ignore the plain mandate of the statute which makes the findings of the Commission conclusive as to the facts if supported by testimony.[1] The courts cannot pick and choose bits of evidence to make findings of fact contrary to the findings of the Commission. The record in this case is filled with evidence of witnesses under oath which support the Commission's findings. Clauses one and three of the Commission's order should be sustained and enforced.

The seventh clause of the Commission's order forbade the use of names of persons as contributors or editors who had not consented to such use and who had neither actually contributed to the publications nor helped to edit them.

The Court of Appeals upheld this clause except as it might apply to the original contributors to Aiton's encyclopedia saying that "it seems to us not 'unfair' to announce as contributors to the derived works those who have been contributors to the original." Aiton's encyclopedia was published about 1909, and respondents' works represent the result of periodic revisions and expansions of the prior work. The Government concedes in

---

[1] Federal Trade Commission Act, Sept. 26, 1914, 38 Stat. 717, U. S. C. Title 15, § 45.

its brief that this clause of the Commission's order does not prevent respondents from representing a person who contributed to the original, as a contributor to their revised publication, if "some of the material originally in Aiton's encyclopedia remained in the new Edition of the revised work." Respondents agree with this interpretation. As between these parties, therefore, this clause permits respondents to represent any person as a contributor to their present revised encyclopedia, if a part of his original material has been carried forward to it. If no part of his contribution to Aiton's encyclopedia has been brought forward, he is not a contributor and should not be represented as such. This clause as originally declared by the Commission would, under this interpretation, properly forbid respondents from falsely representing as contributors or editors those who had actually neither contributed to, nor edited, the publications. The decree of the court below modifying this clause is not in accordance with our conclusion, and clause seven of the Commission's order should be enforced.

The Court of Appeals reversed the eighth clause of the order of the Commission. The reason given by the court below for this action was as follows:

"For the eighth, which forbad the use of such testimonials which had not been given by the person whose name was used, we have been able to find no support in the evidence; . . ."

We are convinced that the Commission's findings of fact justified this clause of the order and that the testimony supports these findings.[2]

---

[2] From paragraphs fourteen and fifteen of the Commission's findings it appears that respondents used the names of various individuals in testimonials and that

"None of these men or this woman ever wrote any testimonial or recommendation of or concerning the New Standard Encyclopedia. The representations that these men and this woman wrote the recommendations for the so-called 'New Standard Encyclopedia' are false, deceptive and misleading."

The Court of Appeals entirely excluded respondent Greener from the operation of the Commission's order, and partially excluded respondents Stanford and Ward. The Commission had found from the testimony that

"Respondents H. M. Stanford, W. H. Ward, and A. J. Greener are the managers and sole stockholders of respondent Standard Education Society and the managers and sole incorporators of Respondent Standard Encyclopedia Corporation . . . . The Commission concludes and infers from the record in this case and so finds that this corporation was organized by the individual respondent for the purpose of evading any order that might be issued by the Federal Trade Commission against the respondent the Standard Education Society."

There was ample support in the testimony for this finding of the Commission.

The Federal Trade Commission Act (*supra*) gives the Commission power to "prevent persons, partnerships or corporations, . . . from using unfair methods of competition in Commerce."

This Court has held that

"a command to the Corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance . . . they, no less than the corporation itself, are guilty of disobedience and may be punished for contempt." *Wilson* v. *United States,* 221 U. S. 361, 376.

Respondents Stanford, Ward and Greener, who are in charge and control of the affairs of respondent corporations, would be bound by a cease and desist order rendered against the corporations. Since circumstances, disclosed by the Commission's findings and the testimony, are such that further efforts of these individual respondents to evade orders of the Commission might be anticipated, it was proper for the Commission to include them in its cease and desist order.

The record in this case discloses closely held corporations owned, dominated and managed by these three individual respondents. In this management these three respondents acted with practically the same freedom as though no corporation had existed. So far as corporate action was concerned, these three were the actors. Under the circumstances of this proceeding, the Commission was justified in reaching the conclusion that it was necessary to include respondents Stanford, Ward and Greener in each part of its order if it was to be fully effective in preventing the unfair competitive practices which the Commission had found to exist. The court below was in error in excluding these respondents from the operation of the Commission's order.

The decree below will be reversed except as to modification of clause ten of the Commission's order, and the cause is remanded with instructions to proceed in conformity with this opinion.

*Reversed.*