INDEPENDENT DIRECTORY CORP. et al.
v. FEDERAL TRADE COMMISSION.

No. 158, Docket 21769.

United States Court of Appeals
Second Circuit.

Argued Feb. 13, 1951.

Decided April 16, 1951.

Hays, St. John, Abramson & Schulman, New York City, John Schulman, Osmond K. Fraenkel, Jacob Steinfeld and Irwin Karp, all of New York City, of counsel, for petitioners.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for American Tel. & Tel. Co., New York Tel. Co., New England Tel. & Tel. Co. and Southern Bell Tel. & Tel. Co.

Hughes, Hubbard & Ewing, New York City, for Reuben H. Donnelley Corp.

W. T. Kelly, General Counsel, James W. Cassedy, Asst. General Counsel, Alan B. Hobbes, all of Washington, D. C., for Federal Trade Commission.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The petitioners, who are two corporations which publish directories and two individuals who are officers in such corporations, are seeking to have set aside a cease and desist order of the Federal Trade Commission.

The order required the petitioners to stop a practice they had been using in soliciting advertising by mail. This practice was to send to a prospective customer one of the petitioners' order blanks to which was pasted one of the prospect's advertisements clipped from some directory or other publication with which the petitioners had no connection. The printed matter on the order blank included statements that the submitted advertisement was from another publication, that the solicitor was an independent directory publication, and that it had nothing to do with any telephone company. The Commission found, following the recommendation of its trial examiner, that these written statements did not prevent the recipients of such solicitations from being deceived into thinking that they were merely approving the proof of, or renewing, an advertisement they had ordered in another publication and consequently signing the petitioners' order blank without being aware that they were signing an order for any additional advertising.

The petitioners attack the order for the following reasons: They say that the evidence did not support the findings that the method of solicitation by mail used by the petitioners was deceptive, since no one who read their order blank would be misled; that even if anyone was deceived the order eliminating the method entirely was too drastic in that some other sufficient means of warning careless signers could have been devised; that they were erroneously denied subpoenas for certain evidence; and that certain offered evidence was erroneously excluded.

The Commission found on adequately supporting evidence the following pertinent facts. The corporate petitioners publish directories which list the names, addresses, and telephone numbers of business concerns. Such concerns are classified in respect to the products manufactured or sold or the services performed, and their advertisements are published with their listing. The directory of the Independent Directory Corporation of Illinois is circulated throughout the Midwest and that of the Independent Directory Corporation of New York throughout the Middle Atlantic and Southeastern States. Each edition of a directory is guaranteed to have a minimum distribution of 50,000 copies, most of which are placed free of charge although a few are sold. The individual petitioners control both corporations and the principal income of the corporations comes

from the sale of listings and advertising. These sales are solicited both by salesmen and by mail, the latter accounting for perhaps thirty per cent of the total receipts. The petitioners do a substantial business with their old customers but continually solicit new ones by the so-called "clip and paste" method outlined above. Often they use clippings of advertisements from the familiar "Red Books" published by The Reuben H. Donnelley Corporation in the New York and Chicago areas, and from the also familiar "yellow pages" in local telephone directories of other communities. They attach such a clipping to an order blank of their own which has a blank space provided for that purpose and send it to the advertiser. The latter is apt to jump to the conclusion from the appearance of the order blank so made up that it is the submission of a proof of an advertisement already ordered, or to be renewed, and to sign the blank in the belief that such proof is being approved. A fair number of such signers so testified as to the actual deceptive effect of the practice upon them. It was also the custom of the petitioners not to send bills for the advertisements until some weeks after the blanks were signed and usually not until the directory had gone to press. When signers who were billed protested that they had not signed an order or had not knowingly signed one, sometimes the orders were cancelled but the more common practice was to send each protestant a photostatic copy of the order and to insist upon payment. Then sometimes compromises were made with those who still refused to pay and sometimes collection suits were brought.

■ The Commission's findings of the deceptive commercial practice, having the support of substantial evidence, are binding here. Excelsior Laboratory, Inc. v. Federal Trade Commission, 2 Cir., 171 F.2d 484. It was reasonably to be expected that a busy business man might glance at any previously published advertisement of his business and take it for granted that the publisher of it had submitted a proof for a renewal, or that he might believe it was a previously ordered advertisement whether he specifically remembered it as such.

Such a misconception is more probable in the case of the careless business man who is also entitled to protection from deception. Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141; Charles of the Ritz Distributors Corporation v. Federal Trade Commission, 2 Cir., 143 F.2d 676, 679, 680.

■ It may be that some more eye-arresting manner might be devised to make sure that the information now actually on the order blank showing its true nature would be brought home to the solicited person. We may assume that there is, and still be bound to give effect to the order made. It is well established that where an illegal trade practice has been proved and found the Commission is empowered to determine the appropriate remedy. Hillman Periodicals, Inc. v. Federal Trade Commission, 2 Cir., 174 F.2d 122. The means chosen for its abatement will not be disturbed unless the Commission's discretion has been clearly abused, and such an abuse has not been made to appear.

■ It follows, therefore, that the order should be enforced, provided there was no reversible error by denial of the right of the petitioners to be heard, *i. e.*, if the order was made after hearing them as due process of law requires.

The subpoenas *duces tecum* which were requested and denied required the New York Telephone Company and the Reuben H. Donnelley Corporation to produce all contracts for listings and advertisements in any of their telephone directories for the years 1940–1948, inclusive, and all copy, proof, correspondence and records of telephone conversations with regard to seventeen of the witnesses and their business concerns. The subpoenas *ad testificandum* would have required the attendance of these seventeen witnesses to testify for the petitioners "to establish the unreliability of their testimony" previously given. What this boiled down to was an attempt to show that the general make-up and appearance of the order blanks sent to these witnesses by the petitioners was so different from that of forms used by the two

companies above named that the testimony of such witnesses that they thought they signed something one of those companies had sent could not be believed.

 The lack of error in the denial of a request for such subpoenas needs little demonstration. In the first place it was but an amplification of the fact that an attentive, careful person could have found enough on the order blank as presented to show just what it was. But, even so, the test as to the likelihood of deception in these cases is not what would be apparent from comparison. Pillsbury v. Pillsbury-Washburn Flour Mills Co., 7 Cir., 64 F. 841; A. Y. McDonald & Morrison Mfg. Co. v. H. Meuller Mfg. Co., 8 Cir., 183 F. 972. This is a situation, as the evidence demonstrates, where the order blanks are often given only a casual glance, and what was said in another but kindred, situation in Coca-Cola Co. v. Chero-Cola Co., 51 App.D.C. 27, 273 F. 755, 756, applies: "He acts quickly. He is governed by a general glance. The law does not require more of him." However, regardless of any doubtful relevancy, the subpoenas were properly denied. They were so sweeping as to be well considered unreasonable. And the Federal Trade Commission is not bound to issue subpoenas *duces tecum* upon request as a ministerial act and then to entertain a motion to quash or to modify. It has a quasi-judicial discretion to deny the application. Hale v. Henkel, 201 U.S. 43, 76–77, 26 S.Ct. 370, 50 L.Ed. 652; Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 306, 44 S.Ct. 336, 68 L.Ed. 696; E. B. Muller & Co. v. Federal Trade Commission, 6 Cir., 142 F.2d 511. Without the papers subpoenaed there was no reason, so far as we can ascertain, for the reappearance of the seventeen witnesses who had previously testified.

The evidence excluded was proof that the petitioners had many satisfied customers who renewed their listings and advertisements and that other publishers solicited advertisements by sending to prospective advertisers clippings of advertisements such persons had in other publications. The fact that petitioners had satisfied customers was entirely irrelevant.

They cannot be excused for the deceptive practices here shown and found, and be insulated from action by the Commission in respect to them, by showing that others, even in large numbers, were satisfied with the treatment petitioners accorded them. And the evidence as to what others did was equally irrelevant. Federal Trade Commission v. Winsted Hosiery Co., 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729; Federal Trade Commission v. Standard Education Society, 2 Cir., 86 F.2d 692, reversed on other grounds, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141.

Petition for review dismissed; order affirmed and enforced.