### R. J. REYNOLDS TOBACCO CO. v. FEDERAL TRADE COMMISSION.

No. 10184.

United States Court of Appeals Seventh Circuit.

Nov. 1, 1951.

L. M. McBride, Chicago, Ill., Donald R. Richberg, Raymond N. Beebe, Washington, D. C. (Davies, Richberg, Tydings, Beebe & Landa, Washington, D. C., McBride & Baker, Chicago, Ill., of counsel), for petitioner.

W. T. Kelley, Gen. Counsel, James W. Cassedy, Asst. Gen. Counsel, James E. Corkey, Federal Trade Commission, all of Washington, D. C., for respondent.

Before MAJOR, Chief Judge, KERNER and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

This case is here on petition to review an order of the Federal Trade Commission (hereinafter referred to as the Commission), issued March 31, 1950. The proceeding before the Commission was on an amended complaint charging unfair methods of competition and unfair and deceptive acts and practices, in violation of Sec. 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45. The alleged unfair methods of competition consisted of the dissemination of false, misleading and deceptive statements, representations and testimonials in connection with the sale in interstate commerce of "Camel" cigarettes.

Petitioner answered the complaint with a general denial of its allegations but admitted jurisdictional facts and the dissemination of the representations, with certain minor exceptions, and the use of testimonials in its advertisements, as charged. A hearing was held before a trial examiner who made his report to the Commission. After the submission of briefs and the hearing of oral argument by counsel for the respective parties, the Commission made its findings as to the facts and concluded that the acts and practices of the petitioner, as found, were in violation of the Federal Trade Commission Act and, predicated thereon, issued the cease and desist order presently under review.

The portion of the order here under attack is as follows:

"It Is Ordered that the respondent, R. J. Reynolds Tobacco Company, a corporation, and its officers, agents, representatives and employees, directly or through any corporate or other device, in connection with the offering for sale, sale or distribution in commerce, as 'commerce' is defined in the Federal Trade Commission Act, of its 'Camel' brand of cigarettes, do forthwith cease and desist from representing, directly or by implication:

"1. That the smoking of such cigarettes encourages the flow of digestive fluids or increases the alkalinity of the digestive tract, or that it aids digestion in any respect.

"2. That the smoking of such cigarettes relieves fatigue, or that it creates, restores, renews, gives, or releases bodily energy.

"3. That the smoking of such cigarettes does not affect or impair the 'wind' or physical condition of athletes.

"4. That such cigarettes or the smoke therefrom will never harm or irritate the throat, nor leave an aftertaste.

"5. That the smoke from such cigarettes is soothing, restful or comforting to the

nerves, or that it protects one against nerve strain.

"6. That Camel cigarettes differ in any of the foregoing respects from other leading brands of cigarettes on the market.

"7. That Camel cigarettes or the smoke therefrom contains less nicotine than do the cigarettes or the smoke therefrom of any of the four other largest selling brands of cigarettes.

"It Is Further Ordered that said respondent, and its officers, agents, representatives and employees, in connection with the offering for sale, sale or distribution in commerce, as 'commerce' is defined in the Federal Trade Commission Act, of its 'Camel' brand of cigarettes, do forthwith cease and desist from using in any advertising media testimonials of users or purported users of said cigarettes which contain any of the representations prohibited in the foregoing paragraph of this order or which are not factually true in all respects."

The Commission contends that each of the seven inhibitions contained in the order is based upon adequate findings and that such findings are substantially and adequately supported by the evidence and that the findings and inhibitions are in conformity with the allegations of the complaint. On the other hand, petitioner contends that the inhibitions either exceed the scope of the complaint, are not supported by the findings or are based upon findings not supported by the record as a whole. In addition, it is argued by petitioner that the Commission has exceeded its jurisdiction in material respects.

Petitioner in its brief has discussed separately and in much detail the findings and evidence which relate to each of the inhibitions in the order, and the Commission in its brief has answered in similar fashion. Any attempt on our part to proceed similarly would result in an opinion of unjustifiable length and in the end could serve no good purpose.

We have read all the expert testimony offered before the Commission by both parties and we are much impressed with the qualifications and learning exhibited in the testimony of the medical, scientific and other expert witnesses. Contrary to what is so often our experience in considering the testimony of expert witnesses, we found a perusal of their testimony quite interesting. This is so because it deals with a subject which is of almost universal interest, that is, the effect which the use of tobacco, and particularly the smoking of cigarettes, has upon the human system. As might be expected, there is considerable contrariety of opinion but there is scarcely any dispute on this record but that in general it has a deleterious effect, the extent of which is dependent upon the number of cigarettes smoked and, to a lesser extent perhaps, upon the physique and condition of the smoker.

As to the representations made by the petitioner in the sale or offering for sale of their "Camel" cigarettes, the Commission found, on a record undisputed in the main, that such representations were general in their nature, were made alike to all persons irrespective of their physical condition or the quantity of cigarettes smoked, and that by means of such representations petitioner had represented to the public, directly or by implication: " * * * that the smoking of Camel cigarettes, during, after, or between meals, irrespective of what, where or when one eats, is good for, advantageous to and aids digestion, in that it renews and encourages the flow of digestive fluids and increases the alkalinity of the digestive tract; that the smoking of such cigarettes relieves fatigue and creates, restores, renews and releases a new flow of body energy giving needed bodily strength and vigor, and that this is 'a basic discovery of a famous research laboratory and throws new light on the subject of cigarette smoking'; that the 'wind' and physical condition of athletes will not be affected or impaired in any way by the smoking of as many Camel cigarettes as they desire; that Camel cigarettes, unlike other brands of cigarettes, are always gentle to and never harm or irritate even a sensitive throat, nor leave an after taste; that the smoking of such cigarettes is soothing, restful and comforting to the nerves, and protects one against becoming 'jittery' or 'unsure' when subjected to intense nerve strain; that one with healthy nerves may smoke as many Camel cigarettes as he or

she likes without the risk of keyed-up, jangled or frazzled nerves, and that Camels are in these respects different from all other brands of cigarettes; and that the smoke of Camel cigarettes contains less nicotine than does the smoke of any of the four other largest selling brands of cigarettes."

The Commission found that all such representations were false in that the tobacco constituents of "Camel" cigarettes are like those of other leading brands of cigarettes; that the tobacco smoke of such cigarettes includes generally carbon dioxide, carbon monoxide, particles of carbon—partially oxidized tobacco products that carry over with the smoke, together with volatilized nicotine, other nitrogenous substances, aldehydes, including furfural, and formaldehyde, ammonia, water vapor and tarry and oily materials; that smoking cannot be considered under any circumstances as beneficial to any of the bodily systems; that nicotine is not a therapeutic agent for any purpose; that it is a poison and a killing poison; that nicotine stimulates the nerves of the involuntary or autonomic nervous system which in turn affects the heart; that as a result of this stimulation it also affects the adrenal glands, which increases their action and causes a rise in blood pressure and a constriction of the small tubes of the lungs; that carbon monoxide in concentrated form is deadly and, like nicotine, is absorbed by the blood, affects the red blood cells and decreases the capacity of the blood to carry oxygen; that in the process of smoking the body is also invaded by other constituent elements of a cigarette, causing local irritation of the mouth, throat and lungs.

The Commission recognized in its findings that under certain limited circumstances and conditions smoking produces no appreciable harmful effects but that this is limited to persons in normal health, accustomed to smoking, who smoke in moderation, who are not hypersensitive to tobacco and who have no existing pathology of any of the bodily systems; that while in some cases a habituated person may become tense and nervous when deprived of a cigarette and that a smoke under such conditions might have a psychological tendency to re-lieve the tension, nevertheless the smoking of cigarettes will not under any condition be physiologically beneficial to any of the bodily systems.

What we have said is merely a brief résumé of the Commission's findings in general. It made detailed findings upon which rest each of the seven inhibitions contained in the order. We see no occasion to set forth the findings in detail as they relate to each of these inhibitions notwithstanding, as noted, that petitioner argues separately the findings upon which each is predicated and the evidence or lack of evidence to support such findings. It is sufficient, we think, that we have carefully examined the record and find petitioner's contention in the main to be devoid of merit. The record not only substantially but abundantly supports the findings as made by the Commission and the findings furnish a sufficient basis for the inhibitions contained in the order. And we are satisfied that the findings and conclusions of the Commission, together with its order, do not exceed its jurisdiction, as asserted by petitioner, because the matters treated, considered and decided were not placed in issue by the complaint.

There is a single exception to the views expressed. The eighth inhibition orders petitioner to cease and desist from: " * * * using in any advertising media testimonials of users or purported users of said cigarettes which contain any of the representations prohibited in the foregoing paragraph of this order *or which are not factually true in all respects.*" (Italics ours.)

Petitioner objects to the italicized portion of this inhibition. It seems to us that this all-inclusive language is too broad and goes beyond any concern of the Commission. A testimonial, for instance, might not be "factually true in all respects" but still immaterial to the subject matter of the instant proceeding in that it bore no relation to the public interest, and it would virtually make petitioner an insurer of the truthfulness of every statement contained in a testimonial, no matter how immaterial or beside the issue in controversy it might be. We think this clause should be eliminated from the order.

Lastly, we come to petitioner's contention that the Commission exceeded its jurisdiction by including as parties to the order, in addition to the petitioner (the sole respondent below), "its officers, agents, representatives and employees." If this were a matter of first impression, we would have no hesitancy in concluding that a cease and desist order should not be directed at parties other than those named in the complaint. We can see no logical basis for the indiscriminate inclusion, in an order directed against a corporation, of all persons connected with it, from the president down to the most humble employee. But the question is not entirely of first impression and we turn to the authorities.

The Commission, in support of its position, cites only three cases. Federal Trade Commission v. Standard Education Society et al., 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141; Steelco Stainless Steel, Inc., et al. v. Federal Trade Commission, 7 Cir., 187 F.2d 693, and Sebrone Co. et al. v. Federal Trade Commission, 7 Cir., 135 F.2d 676. These three cases (the last two, decisions of this court) when taken together furnish little, if any, support for the Commission's position.

In the Standard Education Society case, the officials of the corporation were not only named in the complaint and made parties to the proceeding, but the Commission made a finding, as disclosed by the Supreme Court opinion, 302 U.S. at page 119, 58 S.Ct. at page 116, " 'that this corporation was organized by the individual respondents for the purpose of evading any order that might be issued by the Federal Trade Commission against the respondent, the Standard Education Society.' " On the same page of 302 U.S., 58 S.Ct. on page 117, the court stated: "Since circumstances, disclosed by the Commission's findings and the testimony, are such that further efforts of these individual respondents to evade orders of the Commission might be anticipated, it was proper for the Commission to include them in its cease and desist order." And on the following page of 302 U.S., 58 S.Ct. on page 117, the court stated: "In this management these three respondents acted with practically the same freedom as though no corporation had

existed. So far as corporate action was concerned, these three were the actors. Under the circumstances of this proceeding, the Commission was justified in reaching the conclusion that it was necessary to include respondents Stanford, Ward and Greener in each part of its order if it was to be fully effective in preventing the unfair competitive practices which the Commission had found to exist."

The situation before the Supreme Court in that case bears no resemblance to that of the instant case. And we think it may be assumed that the court there would have reached a different result, in the absence of a record in which the individual respondents were named and particularly in the absence of a finding as to the part which they took in the unlawful activities found against the corporate respondent. In the instant case, not only was there a failure to name individual respondents but there is no proof and no finding as to which of the "officers, agents, representatives and employees" were responsible for the unlawful activities of the corporate respondent.

The Steelco Stainless Steel case presents a similar situation. There, the corporation and its president were named as respondents and we held that the order of the Commission was properly directed to both. In so doing we stated 187 F.2d at page 697: "The record unmistakably discloses that the management, direction and activities of the corporation were those of Carr. * * * In our view, he as an individual occupies precisely the same position as does the corporation."

The Sebrone case, 135 F.2d at page 678, supports the Board's position, but insofar as the opinion discloses the question received scant consideration. The court cited in support of its conclusion Southport Petroleum Co. v. Labor Board, 315 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718.

It is true that similar provisions have been approved in Labor Board cases, the most recent of which is Regal Knitwear Co. v. National Labor Relations Board, 324 U.S. 9, 65 S.Ct. 478, 479, 89 L.Ed. 661, wherein the court approved the inclusion of the words, "its officers, agents, successors and assigns." It is apparent from a reading of

540

this opinion that the court did not regard the question as of any great importance and that its approval of the words in controversy rested upon the premise that its enforcement was lodged with a court of equity, which had ample facilities on a citation for contempt for protecting a person or party improperly brought before the court. No mention was made of the court's previous decision in the Standard Education Society case, 302 U.S. 112, '58 S.Ct. 113, 82 L.Ed. 141, where the court was concerned with an order of the Federal Trade Commission.

We think there is a fundamental difference between an order by the Labor Board and one by the Federal Trade Commission, which suggests a different result as to the orders of the two agencies in the respect under discussion. No remedy is lodged in the former for the enforcement of its cease and desist order other than to petition an appropriate court for enforcement, Title 29 U.S.C.A. § 160(e), and when an enforcement decree is obtained, it is that of the court, a violation of which subjects the offender to a proceeding for contempt. And as pointed out by the court in the Regal Knitwear Company case, 324 U.S. at page 15, 65 S.Ct. 478, it would be within the sound discretion of the court to clarify its decree in the interest of fair play.

An order by the Federal Trade Commission, however, is of far wider scope. It is authorized in a procedure similar to that applicable to the Labor Board to seek an enforcement decree in an appropriate court, but when its order becomes final, either by non-action by the parties or by court approval, it has a further remedy not granted to the Labor Board. Sec. 45(l) of the Act provides: "Any person, partnership, or corporation who violates an order of the Commission to cease and desist after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $5,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the United States."

Thus, the unnamed "officers, agents, representatives and employees" are not only subject to a contempt proceeding for the violation of a court's enforcement decree where equitable considerations prevail, but they are likewise subject to a severe penalty, to be recovered in a civil action. Thus, we think there is a more urgent reason for naming individual respondents in an order of the Commission, predicated upon a finding that such individuals were responsible for the corporate violation, than there is in an order of the Labor Board.

 While under the cases there may be room for differences of opinion, it is our view and we so hold that the Commission is without authority to include in its order, "officers, agents, representatives and employees," in the absence of any finding other than those directed solely at the corporation.

The petition to review and set aside the Commission's order is denied and the order, modified in conformity with the views herein expressed, is affirmed, and an enforcement decree will be entered.