**SUNSHINE ART STUDIOS, INC., et al.,**
**Petitioners,**

v.

**FEDERAL TRADE COMMISSION,**
**Respondent.**

**No. 73-1037.**

United States Court of Appeals,
First Circuit.

Heard June 4, 1973.

Decided July 23, 1973.

Edward J. Barry, Springfield, Mass., with whom Robinson, Donovan, Madden & Barry, Springfield, Mass., was on brief, for petitioners.

Vincent Tricarico, Atty., Federal Trade Commission, with whom Ronald M. Dietrich, Gen. Counsel, Harold D. Rhynedance, Jr., Asst. Gen. Counsel, and Miles J. Brown, Atty., Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This is a petition to review a cease and desist order issued by the Federal Trade Commission against Sunshine Art Studios, Inc. (Sunshine), Junior Sales Club of America, Inc. (J.S.C.), Sales Leadership Club, Inc. (S.L.C.), Guardian Collection Agency, Inc. (Guardian), and Ryland E. Robbins, as an individual and officer of these corporations. Three of the four corporate petitioners, Sunshine, J.S.C., and S.L.C., are engaged in the mail-order business of selling greeting cards to wholesalers, groups, and individuals, primarily housewives and children, on a national basis. Guardian acts as a collection agency for Sunshine and J.S.C. All four corporations are owned and controlled by the Robbins family and Ryland E. Robbins is described as the "general manager of the entire operation." Following an administrative hearing and review, the Commission found that petitioners had engaged in the following unfair and deceptive practices in violation of § 5 of the Federal Trade Commission Act, 15 U.S. C. § 45(a)(1) (1970): (a) Sunshine sent out and attempted to obtain payment for unordered merchandise; (b) Sunshine and J.S.C. falsely represented that delinquent accounts were transferred to a

bona fide independent collection agency; (c) S.L.C. failed to offer refunds for its non-delivery of merchandise as ordered; and (d) S.L.C. falsely represented that imprinting names of purchasers on cards was provided free of charge. In the instant proceeding petitioners challenge the validity of the Commission's complaint, the sufficiency of its proof, and the scope of its order.

■ Turning first to the question of the validity of the pleadings, petitioners argue that they have been deprived of their due process right to be informed of the charges against them because the complaint, in spite of their individual identities, treats all of them as a single economic entity and fails to specify which is allegedly responsible for each of the alleged violations. This contention is not persuasive for at least two reasons. In the first place, substantial evidence in the record as a whole justifies the Commission's treatment of petitioners as a single economic entity. The record indicates, for example, that almost all of the officers and boards of directors of the corporate petitioners are identical, that corporate formalities are not observed, and that dealings between the various corporate petitioners are not conducted at arm's length.[1] Second, there is no indication in the record that the form of the complaint precluded petitioners from understanding the charges or from preparing and presenting their

defense. Since the complaint specifies in at least five instances which petitioner was involved with a particular charge and since evidence concerning all of the charges was presented during the Commission's case in chief, petitioners were unquestionably fully appraised of the nature and details of each allegation. *See* Golden Grain Macaroni v. FTC, 472 F.2d 882, 885–86 (9th Cir. 1972) and cases cited. Under these circumstances, no constitutional privation occurred.

■ Petitioners' challenges to the Commission's unfair trade practice findings are similarly unavailing. First, the finding that Sunshine shipped unordered merchandise and made improper attempts to collect payment for these shipments is based upon undisputed evidence. Following receipt of one of its order coupons, Sunshine regularly sent shipments in addition to the initial selection of cards to the consumer. Based upon its conclusion that the ambiguous language of the order coupons did not place customers on notice that they had ordered these additional consignments,[2] the Commission held that all shipments following the initial one constituted unordered merchandise. In light of the youthful and often inexperienced nature of Sunshine's clientele and the testimony of several Sunshine dealers that they "thought they were ordering a single shipment and did not understand that they were committing themselves to re-

[1] By way of further example, the record shows that director and shareholder meetings were infrequently held and that corporate minutes were never kept; that individuals who were nominally employed by one corporation often performed work for others; that all employees were paid from a single consolidated account; that supplies were ordered on a consolidated basis; that Sunshine's trademark appeared on the back of J.S.C. and S.L.C. cards; that Sunshine paid the utilities and maintained separate general ledgers for the other corporations; and that all were located in the same building, used the same address, and were served by the same switchboard.

[2] Prior to December 1968 the typical coupon in use stated:
"Rush my Free 'Nationally Famous' Christmas Card Assortment, Free

Christmas Card Catalog, Free Personalized Card Album, and box assortments on approval."
After December 1968 the coupons were revised so that they typically read:

"I want to join the unbeatables. Please send me Free Pendant, Free Catalogue, Sales Kit and All-Occasion Sample Boxes on approval. Also other seasonal samples on approval, as they are available."

The Commission found the last clause and last sentence of these two forms, which petitioners relied upon to justify sending shipments in addition to the initial one, to be ambiguous.

ceive successive shipments and to return or pay for them," this conclusion is unimpeachable. *Cf.* Independent Directory Corp. v. FTC, 188 F.2d 468 (2d Cir. 1951). Moreover, given the propriety of this holding, Sunshine's rejoinder that subsequent shipments were made pursuant to valid agreements which arose from the purchaser's submission of these order coupons is clearly wide of the mark.

■■ The Commission's finding regarding Sunshine's and J.S.C's use of Guardian to pursue allegedly delinquent accounts also has substantial record support. While the letters sent out on Guardian stationery clearly created the impression that it was an independent collection agency, in point of fact Guardian had no employees of its own and was wholly owned, staffed, and controlled by Sunshine. Guardian's letters also intimated that if the amount due was not forthcoming, legal proceedings would be initiated. As is clear from the record, however, no such action was ever taken. Since it is settled that the use of what is in effect a fictitious collection agency to coerce payment is an unfair and deceptive practice prohibited by § 5 of the Act, *see* Wm. H. Wise Company v. FTC, 101 U.S.App.D.C. 15, 246 F.2d 702 (D.C. Cir.), cert. denied, 355 U.S. 856, 78 S.Ct. 84, 2 L.Ed.2d 64 (1957), the appropriateness of the Commission's finding on this question is clear. The mere fact that Guardian is separately incorporated and duly licensed as a collection agency under the laws of Massachusetts cannot, in light of the evidence of its absolute domination, justify a different result.

■ The Commission's further finding that S.L.C. failed to offer refunds for the non-delivery of goods as ordered is also based upon undisputed evidence. In 1969, finding that it was unable to fulfill all of its orders for name imprinted cards, S.L.C. used nonimprinted shipments to fill between 15,000 and 30,000 orders. Rather than explicitly informing purchasers of their right to refuse these cards and to obtain a refund,

however, S.L.C. urged customers to give these cards a personal touch by signing them and went on to state:

"we want to emphasize that we are sincere in our willingness to stand behind our guarantee to give you complete satisfaction."

The Commission's conclusion that this caveat did not adequately apprise consumers of their rights regarding this nonconforming merchandise was clearly within its discretion and seems appropriate. *See* Double Eagle Lubricants, Incorporated v. FTC, 360 F.2d 268, 270 (10th Cir. 1965). Moreover, petitioners' contention that those individuals who accepted these cards and did not seek refunds were not deceived by this statement is refuted by the testimony of three purchasers that neither they nor a substantial number of their customers understood that S.L.C. was offering to refund their money.

■ Finally, the Commission's conclusion that S.L.C.'s representation that purchasers' names were imprinted "free" on the cards they ordered was misleading is also supported by the record as a whole. As is clear from S.L.C.'s sundry promotional materials, no real effort was made to merchandise nonimprinted cards. Rather, every advertisement and piece of promotional literature stressed the sale of imprinted cards and that this service would be rendered without charge. Additionally, it is undisputed that S.L.C. always sold both imprinted and nonimprinted cards for the same price and never established a separate price for the nonimprinted variety. Under these circumstances, it seems clear that the Commission was justified in concluding that customers who bought nonimprinted cards received merchandise of a lesser value and that S.L.C. was not rendering the imprinting service free of charge but rather was marketing cards at a price which included the cost of adding this feature. Since similar misleading uses of the word "free" have been held to be violative of § 5 of the Act, *see* FTC v. Mary Carter Paint Co., 382 U.S. 46, 86

S.Ct. 219, 15 L.Ed.2d 128 (1972); FTC v. Standard Education Society, 302 U.S. 112, 115–117, 58 S.Ct. 113, 82 L.Ed. 141 (1937), this finding may stand.

 Petitioners' final contention is that the Commission's order is erroneous and overbroad because it prohibits each of them from engaging in conduct which only one of them may have performed, because it includes within its coverage the individual petitioner Robbins, and because it is cast in either vague or expansive language. As an initial matter, we note that the Commission is vested with broad discretion in formulating remedial orders. See FTC v. Colgate-Palmolive Co., 380 U.S. 374, 392, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965). Only where no reasonable relation between the remedy selected and the violations found exists will an order be set aside. See Jacob Siegel Co. v. FTC, 327 U.S. 608, 613, 66 S.Ct. 758, 90 L.Ed. 888 (1946). Mindful of these guidelines, we conclude, particularly in light of the finding that petitioners operate as a single economic entity, that the Commission did not abuse its discretion in issuing an order running against all of them. See, e. g., Delaware Watch Co. v. FTC, 332 F.2d 745 (2d Cir. 1964). The inclusion of Robbins was also appropriate given the hearing examiner's finding that as a stockholder, officer, and director, he was "deeply involved in the important business affairs of all the corporate [petitioners]." Finally, the wording of the order gives us little pause. Other than to note that paragraphs 6 and 8 [3] will not prohibit petitioners from engaging in lawful collection activities in the future, because, should they begin referring their delinquent accounts to an independent collection agency or to an attorney, a petition to amend or modify the order to reflect these changes would lie under 16 CFR § 3.72(b) (1973), we find

the terms of the order to be sufficiently clear and appropriate to warrant enforcement.

The petition to review is denied and the order may be enforced.

---

3. "6. Representing, directly or by implication, that delinquent accounts will be, or have been, turned over to an independent, bona fide collection agency.

"8. Representing, directly or by implication, that delinquent accounts will be referred to an attorney if payment is not received."