**BARRETT CARPET MILLS, INC. and Roy C. Barrett, Petitioners,**

**and**

**The Carpet and Rug Institute, Intervenor–Petitioner,**

**v.**

**CONSUMER PRODUCT SAFETY COMMISSION, Respondent.**

**No. 78–1611.**

United States Court of Appeals, Fourth Circuit.

Argued June 2, 1980.

Decided Dec. 8, 1980.

Richard H. Gimer, Washington, D. C. (Richard G. White, Nicky Calio, Santarelli & Gimer, Washington, D. C., on brief), for petitioners.

J. Mark Manner, Dept. of Justice, Washington, D. C. (John H. Shenefield, Asst. Atty. Gen., Robert B. Nicholson, Dept. of Justice, Andrew S. Krulwich, Gen. Counsel, Allen W. Hausman, Consumer Product Safety Commission, Washington, D. C., on brief), for respondent.

Before BRYAN, Senior Circuit Judge, and RUSSELL and HALL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The petitioners, Barrett Carpet Mills, Inc. (hereinafter Barrett) and its president, Roy D. Barrett seek review of an order of the Consumer Product Safety Commission (CPSC) which ruled that the petitioners had violated the Flammable Fabrics Act, 15 U.S.C. § 1191, et seq. by manufacturing and selling carpet that failed to comply with standards established under regulations issued by the Commissioner pursuant to § 1195 of the Act. 16 C.F.R. § 1630.1-.5. Jurisdiction to review is conferred by 15 U.S.C. § 1193(e)(1).

The carpet style involved in the Commission's charge was known as Style 222 or "Paradise Valley," was described as a nylon shag with rubber backing and was manufactured at various times between August, 1972 and January, 1974, at which times apparently its further manufacture was discontinued. In the manufacturing process, though, Barrett was not equipped to apply to the construction the latex precoat and foam backing which furnished the fire-retardant element to the style. It accordingly subcontracted this phase of the work. After Barrett had discontinued this style, the Commission began an investigation into that manufacturer's compliance with the Act. It obtained samples of Barrett's various styles and tested them in accordance with its standards as established under its regulations. All of Barrett's products were found to comply except for production on two days of Style 222. These noncomplying products were finished on July 18, 1973 and December 10, 1973. As a result of laboratory tests of the fabric conducted at an independent laboratory, the source of the problem was ascertained to have been the uneven application of the fire-retardant alumina trihydrate to the product on July 18 and December 10. This work was performed by Masterpiece Finishers, an outside contractor. As a result of this failure in the application of alumina trihydrate to Style 222, the Commission filed its administrative complaint, charging that Barrett had sold Style 222 in violation of the regulations. By way of a remedy, it sought a broad cease-and-desist order.

At the hearing on the Commission's complaint before an Administrative Law Judge, Barrett did not seriously dispute the violations on the two days of July 18, 1973 and December 10, 1973. The thrust of Barrett's defense related only to the remedy imposed for such violation. In that connection, it argued that the violations, while admitted, had not rendered the carpet any more inflammable or dangerous than it would have been if the alumina trihydrate had been properly applied, and offered proof in support of this contention. It emphasized that its outside contractor, Masterpiece Finishers, and not it, had been responsible for the uneven application of the alumina trihydrate and asked the Commission to take into consideration that the defective construction had occurred on only two days in the course of several years of construction. In his decision, the Administrative Law Judge

concluded, on the basis of the record before him, that "the Standard [which Barrett was charged with violating] was designed primarily as a manufacturer's quality control test rather than as a test measuring an unreasonable degree of risk of fire in the home." In commenting on the contention of the Commission staff that the violation was such that an order of recall was appropriate, he said that "[n]either the Flammable Fabrics Act nor the Federal Trade Commission Act contain any expressions of Congressional intent concerning recall, replacement, or refund of the purchase price from the ultimate consumer" but, without expressly denying to the Commission such authority, he concluded that an order of recall, as requested by the Commission staff, would not be authorized under the facts of the case even if such an order were permissible. He, also, recognized that the defective construction had been the result of an inadvertent manufacturing error and not an intentional fault. He did, however, in his proposed order, set forth the standard cease–and–desist provision in such cases and in addition, required Barrett to provide for the recall of any of such Style as might remain in the hands of wholesalers and retailers.

Although neither Barrett nor Enforcement Counsel appealed the decision of the Administrative Law Judge, the Commission ordered the case placed on the docket for review of "important questions concerning the Commission's administration of the Flammable Fabrics Act." The Commission specified the "questions" to be considered on argument. Following argument, it entered an order which, while restating the cease–and–desist language in the proposed order of the Administrative Law Judge, ordered the recall of all offending carpet and notification "to all purchasers or persons in possession of Paradise Valley foam back carpet produced by respondents on the failing days (July 18, 1973 and December 10, 1973) to the effect that said carpet failed the Commission's Flammability Carpet Standard." The order went on to hold that while "the Commission [had] authority to order a recall of installed carpet," it did

not order such recall in this case but could exercise that authority "prospectively." It did add a number of provisions, including requirements that Barrett develop a quality control program "acceptable to the Directorate for Compliance and Enforcement of the Commission" and that the staff of the Commission should have unlimited right to conduct inspections, to take or demand samples of any rugs or carpets in production or inventory. It concluded by subjecting the petitioner Roy C. Garrett personally to all the obligations of the order. It is this order of which the petitioners seek review.

At oral argument, the parties narrowed the issues for resolution. There is no objection to the cease-and–desist provision of the order of the Commission on the part of Barrett. It is conceded by both parties that the provision of the order for recall from wholesalers and retailers has been mooted. Nor does the Commission seek to sustain the requirements for a right of inspection (Paragraph VII of the Commission's Order). The only issues remaining to be resolved by us are thus the authority of the Commission to require the recall from customers of installed carpet, the propriety of the order requiring notification to all purchasers of the failure of the carpet to meet the Commission's standards, the validity of a requirement of a quality control program "acceptable to the Directorate for Compliance and Enforcement of the Commission," and the authority to impose the obligations of the order on the petitioner Roy C. Barrett personally.

I.

We have little difficulty with the first issue raised by the petitioners. The action taken by the Commission rested exclusively on the authority given it under the Flammable Fabrics Act. The remedies for a violation as authorized under that Act are established by reference to the remedial provisions of the Federal Trade Commission Act, 15 U.S.C. § 45. It was held in *Heater v. FTC*, 503 F.2d 321, 325 (9th Cir. 1974), that the authority of the Federal Trade Commission under such remedial provisions

extended only to the issuance of a cease-- and–desist order upon a finding of a violation. Because the remedial authority is thus the same under the Flammable Fabrics Act as under the Federal Trade Commission Act, the same court which had decided *Heater* subsequently applied the same limitation on remedial action to a proceeding by the Consumer Product Safety Commission under the Flammable Fabrics Act as it had declared in proceedings by the Trade Commission. Quoting the language of the Chairman of the CPSC writing in dissent to a decision of that Commission to the contrary, the court said in *Congoleum Industries, Inc. v. Consumer Product Safety Commission*, 602 F.2d 220, 226 (9th Cir. 1979):

> "Although the Flammable Fabrics Act is a public safety statute, neither it nor the Federal Trade Commission Act (15 U.S.C. 41 *et seq.*) provides the specific authority to require notification, recall, and repurchase of items that do not conform to standards issued under the Flammable Fabrics Act. Those provisions of the FTC Act that are incorporated into the Flammable Fabrics Act (15 U.S.C. 1194) provide only for the issuance of cease and desist orders upon the finding of a violation of law. The Flammable Fabrics Act only authorizes the extraordinary remedies of seizure and injunction (15 U.S.C. 1195)."

We agree with this conclusion and find no authority under the Flammable Fabrics Act for an order of recall or of notification.

The Court in *Congoleum* did add, by way of a footnote, that, had the Commission proceeded under 15 U.S.C. §§ 2064 and 2079(d), it could have ordered recall and notification. *Id.* at 226 n. 8. But such an order requires as a prerequisite a finding, after hearing, of a substantial risk of injury. The testimony of the petitioners suggests that it might be difficult for the Commission to meet this burden. In any event, the Commission made no effort to proceed under this authority in this action, and is accordingly not entitled to invoke the power given under §§ 2064 and 2079.

■ As a result of our conclusion that the Commission had no authority in this proceeding to order either a recall or a notification to customers, it is unnecessary for us to consider the admissibility of the petitioner's testimony that the carpet found in violation of the regulations was no more inflammable than carpet meeting the standard fixed in the regulation and represented no "substantial" product danger, since such testimony was only offered in answer to the Enforcement Staff's request for a recall and notification order.

## II.

■ The obligation of Barrett under the order to file a quality control program which would be acceptable to the staff of the Commission is challenged by the petitioners for vagueness and indefiniteness. This court has heretofore held that in cease–and–desist orders, the requirements imposed on a party must be clear and definite. *Asheville Tobacco Board of Trade, Inc. v. FTC*, 294 F.2d 619, 628–29 (4th Cir. 1961). It seems to be conceded by the Commission that the questioned language (i. e., "acceptable to the Directorate for Compliance and Enforcement of the Commission" in Paragraph VI) is not definite, but the Commission suggests that, it must be assumed that the Commission staff will not be unreasonable in approving a plan. For that reason, the Commission argues that the language of the provision should be considered permissible. However, this argument does not meet the objection of vagueness addressed to the provision. It cannot be disputed that there is no final standard stated in Paragraph VI for the quality control plan other than acceptability by the Commission staff, which, despite the Commission's assurance, could be arbitrarily withheld. The petitioners are not unreasonable in objecting to such a provision, nor is it apparent that the Commission needs such power, subject as it is to abuse. After all, the Commission states that the plan it seeks is merely to "assure that flame retardant [would be] properly applied to the carpet." Of course, no plan, especially something as elusive as a "quality control

plan," can "assure" that there will be no errors whatsoever in a manufacturing process; the most it can do is establish reasonable procedures which will eliminate or minimize such errors. And it would appear from the language of Paragraph VI that this is all the Commission really seeks, for it limits Barrett's obligation in formulating a quality control plan by the qualifying language "to the maximum extent practicable." An amendment of this provision of the order by imposing on Barrett the obligation to submit a quality control plan which is "reasonably calculated to eliminate or minimize 'to the maximum extent practicable' errors in the manufacturing process that cause properly designed carpet nonetheless to fail the flammability standard" should meet the purposes of the Commission, and goes as far as the Commission should be allowed to go in this regard. We, therefore, find that the quality control provision should be modified as stated above by eliminating the language in the order which declares that the quality control system must, in addition to being as reasonably effective as practicable, be "acceptable" to the Enforcement unit of the Commission.

### III.

The only remaining issue is the propriety of including the petitioner Roy C. Barrett in the cease–and–desist order. The sole basis for such inclusion was that Barrett was the president of the corporation involved in the violation. In resisting such inclusion in this case, the petitioners do not dispute the authority of the Commission in an appropriate case to include the officers of a corporation in the cease–and–desist order upon a finding of a violation under either the Federal Trade Act or the Flammable Fabrics Act. Their position is that that authority is not to be exercised arbitrarily and is reserved for those particular cases in which there is more than a simple unintentional manufacturing error or a marketing practice for which the officers may have been responsible or of which they were at least aware. *See, e. g., Coro, Inc. v. FTC,* 338 F.2d 149, 154 (1st Cir. 1964) (officer dismissed from order where no showing he was aware of the deceptive pricing policies); *Doyle v.*

*FTC,* 356 F.2d 381, 383 (5th Cir. 1966) (no evidence of possible evasion of cease–and–desist order).

The Commission has cited several cases for the proposition that it can properly include a corporate officer in a cease–and–desist order. These cases are distinguishable from this case. For example, in *Standard Distributors v. FTC,* 211 F.2d 7, 15 (2d Cir. 1954) the defendant was charged with a deliberate misrepresentation of claims in order to induce prospective customers to purchase encyclopedias. The President of the company, Bimstein, was included in the cease–and–desist order in his individual capacity. While few facts are given in *Standard Distributors* which would indicate Bimstein's control over the practice, the Second Circuit justified its decision on the basis of *FTC v. Standard Education Society,* 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141 (1937), a case in which the Supreme Court noted that "efforts of these individual respondents to evade the orders of the Commission might be anticipated" and that the respondents "acted with practically the same freedom as though no corporation had existed." *Id.* at 119–20, 58 S.Ct. at 116–17 (cited at 211 F.2d at 15). In *Benrus Watch Co. v. FTC,* 352 F.2d 313, 324–25 (8th Cir. 1965), *cert. denied* 384 U.S. 939, 86 S.Ct. 1457, 16 L.Ed.2d 538 (1966), the FTC filed its complaint because, *inter alia,* Benrus Watch Company had preticketed its watches with a price far above the regular retail price. Thus consumers were mislead into thinking they had gotten a bargain by purchasing a watch at a price below the preticketed price. Similarly, in *Pati–Port, Inc. v. FTC,* 313 F.2d 103 (4th Cir. 1962), the FTC found, and the court affirmed, that the defendant had completely misrepresented that the special selling price of its carport or patio was $77 instead of the regular $249, that persons allowing their carport or patio to be used as a demonstrator would receive a reduction in price, that the carport or patio was unconditionally guaranteed, that the carport or patio was all aluminum, and that the carport or patio included a foundation or floor. In both *Benrus* and *Pati–Port* the court noted that the officer charged in the order was aware of the

deceptive practices and had approved them. 352 F.2d at 325; 313 F.2d at 105. *See, also, Cotherman v. FTC*, 417 F.2d 587, 595 (5th Cir. 1969) (deceptive advertising and unfair lending practices; company officer "actively participated in scheme"); *Dlutz v. FTC*, 406 F.2d 227 (3d Cir.), *cert. denied*, 395 U.S. 936, 89 S.Ct. 1996, 23 L.Ed.2d 451 (1969) (false and deceptive advertising, sales, and repairs; officer had "full knowledge of unlawful nature"). Even in those cases in which the corporate officer who was included in the order did not formulate or approve the deceptive practice, at least the practice covered by the order was an egregious practice, one designed to mislead the public. *See, e. g., Rayex Corp. v. FTC*, 317 F.2d 290 (2d Cir. 1963) (preticketed prices on sunglasses); *Standard Educators, Inc. v. FTC*, 475 F.2d 401 (D.C. Cir.), *cert. denied*, 414 U.S. 828, 94 S.Ct. 54, 38 L.Ed.2d 63 (1973) (false and misleading statements by encyclopedia salesmen). Because of the nature of the violation, the Commission in these cases was justified in including a company officer in the order to ensure that the order was not evaded.

The instant case presents no such situation such as was presented by the cases in which the inclusion of the corporation's officers was approved. This, for instance, is not a case in which it can fairly be said that the individual defendant, Barrett, acting as an officer of his co-petitioner, is likely to seek to evade the order of the Commission, nor for that matter was there any evidence in the record that he, as a corporate officer, had conducted the affairs of the business as though no corporation had existed. Moreover, the acts complained of here do not rise anywhere near to the level of deceptive and unfair practices perpetrated in the cases in which the officers of the corporate respondent have been included in the cease–and–desist order. To the contrary, the practices complained of in this case were admitted by all parties to have been the result of an inadvertent error in the quality control of a subcontractor. The ALJ specifically found that these were "operational accidents which are not likely to occur, certainly not intentionally." Also, Barrett Mills has at all times cooperated with the CPSC in testing "Paradise Valley" and, though it has challenged the Commission's recall authority in this case, it has voluntarily recalled any carpet found not to conform to the regulations from its retailers and distributors. Under these circumstances we can find no justification, and the Commission offered none, for including Roy Barrett in the cease–and–desist order in his individual capacity. We thus hold that the Commission may not apply a cease–and–desist order to a company officer in his individual capacity where the violation complained of was inadvertent and not likely to recur, unless the Commission can show some reason for including an officer other than the mere fact that he is an officer.

## CONCLUSION

For the reasons stated, Paragraphs I and II of the Commission's order herein are set aside; Paragraph VI is ordered modified as hereinbefore set forth; and Paragraph VII is, with the consent of the Commission, stricken. As so modified, the cease–and–desist order is affirmed, and the cause is remanded to the Commission for the entry of an order in conformity herewith.