**NEW AMERICAN LIBRARY OF WORLD LITERATURE,**
Inc., et al.

v.

**FEDERAL TRADE COMMISSION.**

No. 50, Docket 22647.

United States Court of Appeals
Second Circuit.

Argued Dec. 16, 1953.

Decided May 10, 1954.

Freidin & Littauer, New York City, for petitioners; Rudolf M. Littauer, Sidney A. Diamond and Murray Gartner, New York City, of counsel.

Earl W. Kintner, Gen. Counsel, Robert B. Dawkins, Asst. Gen. Counsel, and James E. Corkey, Washington, D. C.; for respondent.

Before SWAN, CLARK, and HINCKS, Circuit Judges.

SWAN, Circuit Judge.

This is a petition pursuant to section 5(c) of the Federal Trade Commission Act, 15 U.S.C.A. § 45(c), to obtain review of an order dated January 6, 1953, entered in a proceeding commenced by the Commission in September 1950. The corporate petitioner is engaged in the business of publishing and selling cheap, paper-covered, pocket-sized books, practically all of which are reprints of books previously published by others. The two individual petitioners are officers of the corporation who jointly control its policies and practices. Petitioners' reprint editions include both fiction and non-fiction and are designated by the trade names "Signet" and "Mentor" respectively. They are marketed through a national distributor and are retailed at 25 cents or 35 cents each through bookstores, drugstores, newsstands in railway and bus stations, and otherwise. The record shows that the petitioners sell more than 30,000,000 annually. About one-fifth of the books sold by them in recent years have been abridged editions and in some cases the original title has been changed to give the book more popular appeal or better to indicate its subject matter. Abridgment or change of title has been made with the consent of the author or the original publisher, and the fact has been stated on the title page, copyright page or elsewhere, and sometimes, but not always, on the front cover.

The complaint charged the making of certain affirmative misrepresentations with respect to the books. These charges were dismissed. The complaint also charged the petitioners with failure to disclose or to disclose adequately that certain of their books are abridgments and that changes of title have been made. The Commission found that in offering for sale and selling books which are in fact abridgments and books which have previously been published under different titles, the petitioners failed to disclose adequately the facts of abridgment and change of title, and that such failure has had the capacity and tendency to mislead and deceive a substantial portion of the purchasing public into the erroneous belief that such abridged books contained the complete original text and such newly titled books were new books. Its order forbids the sale of any abridged book or the substitution of a new title unless no-

tice of abridgment and change of title has been given in a specified manner.[1]

The Commission's conclusion that the petitioners' acts and practices constituted unfair and deceptive acts and practices rests on the premise stated in Paragraph Six of its decision:

"Paragraph Six: The offering of a book for sale constitutes an implicit representation that the book contains the entire original text and that the title under which it is offered is the original title. In the absence of a clear and conspicuous disclosure of the fact of abridgment or change of title, the offering of an abridged book or of an old book under a new title unquestionably has the capacity and tendency to deceive and mislead prospective purchasers."

This is a finding of fact which Judge Clark and Judge Hincks think the Commission was entitled to make, even though no testimony was offered on that subject, and that some of the books in evidence as exhibits sufficiently demonstrated deceptive acts or practices which "in the interest of the public" the Commission was empowered to prevent by a proper order to cease and desist."[2] See Hillman Periodicals, Inc., v. Federal Trade Comm., 2 Cir., 174 F.2d 122.

But a majority of the court, consisting of Judge Hincks and Judge Swan, believes that the order is not supported by necessary evidence and findings with respect to the requirement that the notice of abridgment or change of title be carried "in immediate connection with the title." The witness Lockley, a Professor of Marketing in the Graduate School of Business Administration of New York University, testified as to the factor of "attention value" which he defined as the ability of an element on the printed page to attract a reader's attention. His opinion testimony satisfies us that in many contexts a disclosure not in immediate connection with the title of the book would sufficiently attract the reader's attention to prevent deception. His testimony was not disputed. Doubtless the Commission was not required to accept it if not satisfied as to the witness' expert qualifications or if it seemed inherently unsound or in conflict with physical evidence. But it was at least under a duty to weigh it. The trial examiner had found that "there was strong support for the respondents' (now the petitioners') position" and that it had "substantial merit," but thought himself bound by the Hillman case, supra, to require the disclosures to be in immediate connection with the title in the case of abridgments and to accompany immediately the new title in the case of a change in title. The Commission held that the trial examiner

---

1. The order directs the petitioners to "cease and desist" from:

"1. Offering for sale or selling any abridged copy of a book unless one of the following words, namely: 'abridged,' 'abridgment,' 'condensed' or 'condensation,' or any other word or phrase stating with equal clarity that said book is abridged, appears upon the front cover and upon the title page thereof in immediate connection with the title, and in clear, conspicuous type.

"2. Using or substituting a new title for, or in place of, the original title of a reprinted book unless, upon the front cover and upon the title page thereof, such substitute title is immediately accompanied, in clear, conspicuous type, by a statement which reveals the original title of the book and that it has been published previously thereunder."

2. Judge Swan would remand the cause for the taking of testimony, being of opinion that the situation is like that before the court in Ohio Leather Co. v. Federal Trade Commission, 6 Cir., 45 F.2d 39, where the court said, at page 41:

"The order cannot be sustained in the absence of an affirmative finding, based upon substantial evidence, to the effect that the consuming public, asking for kid shoes, desires and expects to get shoes made from the skin of a kid, or of a goat, as the case may be. The present record being insufficient, it should be remanded, in order that all parties interested may take further proofs and have a finding made, if, indeed, the proofs may then justify any definite conclusion."

was in error and that the Hillman order was not meant to set up a fixed and immutable rule for the way in which such disclosures must be made in every case in order to be adequate. In Paragraph Eight of its decision the Commission says: "It may be that those disclosures could be made adequately, so far as averting deception is concerned, elsewhere than in immediate connection with the title, but this would be at the expense of the respondents [petitioners] in distracting initial attention from the title." As shown by the quotation the Commission's reason for requiring the disclosures to be in immediate connection with the title is not to avoid deceiving the public but to avoid unduly burdening the petitioners. But the petitioners in some of the exhibits have themselves chosen to bear the burden of distracting initial attention from the title by printing the original title on a brilliantly colored strip, far removed from the title under which they offer the book for sale. See, for example, the exhibit entitled "Gunsmoke" discussed by the Commission in Paragraph Seven of the decision.

██ If the notice actually given is sufficient to avoid deception, the majority of the court thinks the Commission lacks power to require it to be located in a position other than that chosen by the petitioners. In our view the situation is not one in which the need to prevent deception has been shown to require the regimentation of an industry thereby depriving it of the benefit of legitimate enterprise in competition and denying to its product the quality of individualized treatment. In short, we think that both the public interest and the legitimate interests of the publisher could be sufficiently protected by a more flexible requirement, such as that the notice of abridgment or new title should be carried on the cover in immediate connection with the title or in a position adapted readily to attract the attention of a prospective purchaser.

Accordingly, because of the expansive scope of the order, the order is reversed and the cause remanded for further proceedings.

CLARK, Circuit Judge (dissenting in part).

The opinion and decision herein is confusing; I find it difficult to ascertain just the present or future posture of the case. First, there is affirmance (by majority vote) of the Commission's basic finding that the petitioners' acts and practices were unfair and deceptive. This finding clearly calls for affirmative relief to be determined by the Commission, whose discretion in this regard is extensive under our settled view. Consumer Sales Corp. v. F. T. C., 2 Cir., 198 F.2d 404, 408, certiorari denied 344 U.S. 912, 73 S.Ct. 335, 97 L.Ed. 703; Independent Directory Corp. v. F. T. C., 2 Cir., 188 F.2d 468, 470; Gold Tone Studios, Inc., v. F. T. C., 2 Cir., 183 F.2d 257, 259; Hillman Periodicals, Inc., v. F. T. C., 2 Cir., 174 F.2d 122, 123; Herzfeld v. F. T. C., 2 Cir., 140 F.2d 207, 209. Then, contrary to this line of authority, it is ruled (by vote of a different majority) that the Commission's remedy—which we have earlier affirmed in Hillman Periodicals, Inc., v. F. T. C., supra—is here erroneous. When content is given to this charge, the discovered error seems slight, if not nonexistent; for it is said that there should be "a more flexible requirement, such as that the notice of abridgment or new title should be carried on the cover in immediate connection with the title or in a position adapted readily to attract the attention of a prospective purchaser." Only the part I have italicized is new; paradoxically it states merely the obvious intent of the earlier part, but by its very protestation and addition it waters down and confuses the original clear statement. Thus except for the circumstances of its origin, it might be taken as only a gloss on, or interpretation of, the original. But be that as it may, it thus seems held that the Commission's own order should be changed only by the addition of these few words. Yet actual-

ly the direction is for a complete reversal and remand of the proceedings.

I think the confusion arises from our having stepped out of our usual role of reviewing only for substantial error and of seeking to avoid interference with the Commission's discretion in choosing the appropriate remedy. In Hillman Periodicals, Inc., v. F. T. C., supra, 2 Cir., 174 F.2d at page 123, we affirmed a Commission order requiring a competing "paperback" publisher "to refrain, in connection with the distribution of reprints from which substantial part of the original text had been deleted, from representing *in any manner* [italics supplied] that they were 'unabridged' or 'complete and unabridged' or 'full length novel' or any other term of similar import to designate or describe them"; it further required this publisher "to put the word 'abridged' on the front cover and title page of such reprints 'in immediate connection with the title and in clear, conspicuous type'"; and "Whenever a new title was used in place of the original it was required that 'such substitute title be immediately accompanied, in equally conspicuous type, by the title under which such story was originally published.'" The opinion does not recite the evidence or discuss it. The extracts quoted show, however, that the representations covered a variety of forms, as here. That decision quite properly set the standard for the trade; while the Commission could have made a more elaborate record here, it doubtless did not expect a disposition on our part to allow special privileges of competition

upon a bold or shrewd deviation from what seem to be the normal and honorable practices of a now enormous business. See Appel, The Paperback Revolution, 36 Saturday Review No. 48, Nov. 28, 1953, 13, 14, 45-48; 48 Fortune 123 (Sept. 1953); Lockhart & McClure, Literature, The Law of Obscenity, and the Constitution, 38 Minn.L.Rev. 295, 302, 303 (1954).

The evidence here to support the Commission's basic finding is wholly complete and convincing. True, it was based on the spurious products themselves, viewed in the light of reason, i. e., upon what the eye sees, interpreted in the light of the earlier ruling. And true, the Commission did not produce formalistic evidence from experts so-called or from persons actually deceived; why attempt to gild the lily by evidence actually less convincing than the exhibits themselves? As we have often ruled, all that needs to be shown before the Commission is a tendency or "capacity to deceive" customers, and actual customers deceived need not be produced. Charles of the Ritz Distributors Corp. v. F. T. C., 2 Cir., 143 F.2d 676, 680, citing a wealth of cases; F. T. C. v. Algoma Lumber Co., 291 U.S. 67, 81, 54 S.Ct. 315, 78 L.Ed. 655; F. T. C. v. Standard Education Soc., 302 U. S. 112, 116, 58 S.Ct. 113, 82 L.Ed. 141; F. T. C. v. Raladam Co., 316 U.S. 149, 62 S.Ct. 966, 86 L.Ed. 1336; Rosenblum v. F. T. C., 2 Cir., 192 F.2d 392; Book-of-the-Month Club, Inc., v. F. T. C., 2 Cir., 202 F.2d 486. As the examples from petitioners' products collected in the footnote show,[1] deception is inevitable to

---

1. See, e. g.:
   "The Old Man" by William Faulkner, described on the cover as "By the Author of 'The Wild Palms'" and as "A Special Edition"—actually published originally as a part of "The Wild Palms";

   "Malice in Wonderland, a mystery by Nicholas Blake," so stated over the cover legend "complete Penguin Books unabridged," but shown in fine print on the back of the title page, amongst the copyright notices, to be not this title at all, but "The Summer Camp Mystery" by the same author;
   The like case of "Market for Murder"

by Frank Gruber, actually "Beagle Scented Murder";

   "Now I Lay Me Down to Sleep" by Ludwig Bemelmans, noted on the back cover to have been described by the N. Y. Herald Tribune as "a beautiful, brilliant, wicked tour de force," and by the N. Y. Times as having "a smile on every page"; this, too, was "A Special Edition," so special in fact that it omitted some 39 per cent of the text;
   "The Golden Sleep" by Vivian Connell, represented on the cover as "More Daring Than 'The Chinese Room'" (by the same author), but said on the inside copyright

any one but a walking library of the world's best, medium, or worst literary efforts.

Since, however, our actual decision holds this evidence sufficient for the fundamental finding, it seems especially illogical to decline to apply the same tests in connection with the remedy where the visual evidence is at least as strong. Thus there are various ways petitioners pursue to disguise their changes. A favorite one appears to be the words in rather small type near the foot of the cover—where they would not be read in the usual drugstore rack—"A Special Edition," which, as the examples in footnote 1 show, is true in only a Pickwickian sense. Even some of the actual disclosures seem only questionably adequate when made in similar inconspicuous and unlikely way, e. g., "With Minor Abridgments" low down and finely printed on the cover of "The City and the Pillar" by Gore Vidal, or "Abridged with the Author's Consent" at the very foot of the cover of Walter Van Tilburg Clark's "The Track of the Cat." Another formula is to set forth the true title in parentheses somewhere on the cover page (often low down) without distinguishing legend.[2] And there are other variations to cover either change of title or abridgment. Often, but not always, the matter is more or less explained in small print on the inside title or following page if a customer has the persistence and can bear the frowns of the sales clerk to go that far. But that there is misrepresentation is clear. Surely, to take another example, the display of Thomas Wolfe's "Look Home-

ward Angel" means just that, and not merely, say, half of that famous book. Petitioner Weybright himself testified that in general paperbacks must sell themselves on their covers and "blurbs." Here is opinion from the trade itself as to the value of these representations; and we can see for ourselves, just as could the tribunal of first instance, the Commission, how completely false and misleading these sales appeals are.

Hence merely to look at these book covers is to have ample demonstration of the misleading character of petitioners' present practices and the need for some adequate remedy such as the Commission has proposed. Not all the disguises are equally misleading, but the order is sufficiently flexible to afford discrimination among them. The inadequacy of the modified form of order here suggested can be seen by putting these books about the distance away from the eye of the ordinary drugstore rack or by actually covering a part of the cover as in such a rack. An original title, it is then clear, is of aid to the purchaser by eye only when it is in immediate connection with the presently displayed title or blurb. An "expert's" theorizing in a highly unreal context a long way away from an actual drugstore rack cannot overturn these obvious and necessary deductions from actual observation. There can be no "attention value" for a buyer— not, or not yet, "the reader"—for something he cannot even see in the display racks from which he must make his choice.

There is, of course, a further difficulty when we assume the role of direct-

---

page to be "slightly shortened" and actually cut about 22 per cent;

"having a baby" by Alan F. Guttmacher, the cover of which identifies it in capitals as a *Signet Book*, though it does contain near the bottom a small inconspicuous legend, "The Story of Human Birth," a hardly adequate reference to the original title, "Into This Universe: The Story of Human Birth";

"Music for the Millions," appearing as "A Concise Encyclopedia of Musical Masterpieces" by David Ewen, which tells no

more in either its preface, title page, or copyright notice, though the back cover, amid an exposition of the author's qualities, does say in its ultimate sentence, "a concise, condensed version"—at best not much of a warning that some 65 per cent of the original (which had sufficient merit to achieve six printings) is here omitted.

2. The exhibit entitled "Gunsmoke," referred to in the opinion, demonstrates the kind of complete confusion to which these practices lead.

ing the kind of relief and thus relieve the Commission of ultimate responsibility. If our choice is not effective for the purpose, we are not in a position, as is the Commission, to obtain the necessary information and to act intelligently to correct the difficulties we have caused. So if we have chosen wrongly, we have made enforcement practically impossible. Nor are we in a position to know and maintain a fair balance among various elements in the trade. We are told that many paperback publishers are entering into stipulations with the Commission based on the Hillman case—surely a desirable and a fair step in impartial adjustment within the trade. Now our decision suggests a chance of special favors for intransigence; the healthy uniformity is gone.

Since the petitioners have here won a reversal, presumably they have something of value for their future advertising. But just what it is, is not so clear. I suspect they have won only a chance at further litigation eventually in contempt proceedings. For I doubt if the majority opinion here gives them anything real upon which they dare operate. It seems to me that this is a decision by which everyone loses, because confusion is substituted for clarity and directness. I find it hard to discover the purpose of a modification thus so trouble breeding and at best only so parsimoniously helpful to the complaining parties. The key perhaps is found in the plea against "the regimentation of an industry" and for "the benefit of legitimate enterprise in competition." But policing an industry against the few mavericks who plan to profit by deception would seem hardly regimentation; rather it is promoting healthy competition according to reasonable rules of fair dealing. A climate favorable to competition does not, in my judgment, really require encouragement of deceit.

Hence I think that, as in the Hillman Case, the order should be affirmed and enforced.