**BANTAM BOOKS, INC., Petitioner,**
v.
**FEDERAL TRADE COMMISSION,**
**Respondent.**
No. 136, Docket 25512.

United States Court of Appeals
Second Circuit.

Argued Jan. 8, 1960.
Decided March 4, 1960.

Horace S. Manges, New York City (Jacob F. Raskin and Weil, Gotshal & Manges, New York City, on the brief), for petitioner.

Alan B. Hobbes, Ass't Gen. Counsel, Washington, D. C. (Daniel J. McCauley, Jr., Gen. Counsel, Washington, D. C., and Jno. W. Carter, Jr., Washington, D. C., Atty., on the brief), for Federal Trade Commission, respondent.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Bantam Books, Inc., a corporation carrying on business in New York, petitions under § 5(c) of the Federal Trade Commission Act, 15 U.S.C.A. § 45(c), that we review and set aside an order of the Federal Trade Commission directing petitioner, a large publisher of paperbound books, to cease and desist from offering for sale books that constitute abridgments or have been retitled except on printing certain notices as set forth in the margin.[1] In Hillman Periodicals, Inc. v. F. T. C., 2 Cir., 1949, 174 F.2d 122, we affirmed a more rigorous order of the Commission dealing with a similar problem; the order here under review contains the more limited remedial provision which a majority required in New American Library of World Literature, Inc. v. F. T. C., 2 Cir., 1954, 213 F.2d 143.

As the order indicates, two different types of republished paperbacks are involved—abridgments and books in full text but with a new title. Both types have a multi-colored glossy paper cover carrying an eye-catching illustration. The title appears in large type near the middle of the cover. The name of the author is in smaller but still good-sized type, in varying positions. In most cases there is also a descriptive statement as to the book; this also in type smaller than the title but easy to read.

With one exception[2] all the abridgments carry on their cover a legend descriptive of that fact. This is at the bottom of the page, in type considerably smaller than the rest, and without use of upper and lower case. In some instances the legend is printed in part over colors that decrease its legibility, although in no instance is it illegible. No other notice of abridgment is given.

The covers of the books published under new titles also carry at the bottom a legend giving the original title of the book. As in the case of the abridgments, the type in this legend is much smaller than in the title and smaller also than

---

1. The order directs petitioner to cease and desist from

"1. Offering for sale or selling any abridged copy of a book unless one of the following words, 'abridged,' 'abridgment,' 'condensed' or 'condensation,' or some other word or phrase stating with equal clarity that said book is abridged, appears in clear, conspicuous type upon the front cover and upon the title page of the book, either in immediate connection with the title or in another position adapted readily to attract the attention of a prospective purchaser;

"2. Using or substituting a new title for, or in place of, the original title of a reprinted book unless a statement which reveals the original title of the book and that it has been previously published thereunder appears in clear and conspicuous type upon the front cover and upon

the title page of the book, either in immediate connection with the title or in another position adapted readily to attract the attention of a prospective purchaser."

2. The exception was "The Count of Monte Cristo" by Alexandre Dumas. The cover stated this to be "A New Translation by Lowell Bair." No indication of abridgment was given on the cover or elsewhere, although in fact the translation contained less than a third as many words as the French original and there was other evidence of substantial deletion and condensation. The claim that the notice as to translation apprised the purchaser "that Petitioner's book is not an exact republication of an existing work" is unpersuasive; "translation" means a complete translation unless there is warning to the contrary.

in the other material on the cover; and at least in some instances, because of being printed over a part of the illustration or by virtue of the color combinations, it does not hit the eye, although in no case can we say it is illegible. In addition, notice of retitling is printed on a number of interior pages including the title page, the page bearing the copyright notice and sometimes a third page. Here also the type of the original title is considerably smaller than of the new title but is in no wise unreadable.

The Commission introduced no evidence as to deception other than the books themselves and testimony as to the degree to which "The Count of Monte Cristo" (see footnote 2) was abridged. Petitioner offered the testimony of a psychologist. He testified as to the viewing habits of buyers of paperbacks based on some 1400 interviews. On the basis of this, he gave opinion testimony that the legends with respect to abridgment and retitling would "readily attract the attention of a prospective purchaser."

· The Commission's trial examiner, J. Earl Cox, found that while "The more intelligent, more experienced, careful prospective buyer might well observe and comprehend the many legends, * * * many buyers would not glean the fact that some of these books had previously been published under different titles, or were abridgments, and would therefore be deceived." He therefore found that petitioner had engaged in "unfair or deceptive acts or practices in commerce" prohibited by § 5(a) of the Federal Trade Commission Act and should be ordered to cease and desist therefrom, in the language quoted above (footnote 1). The Commission affirmed.

Petitioner contends (1) that there was no substantial evidence to support the finding that it had engaged in "unfair or deceptive acts or practices in commerce," and (2) that the cease and desist order deprived it of due process of law because of the Commission's failure to promulgate a sufficiently clear standard as to what constitutes adequate disclosure. We find no merit in either contention.

■ (1) This Court held in New American Library of World Literature, Inc. v. F. T. C., supra, that the Commission might lawfully find that a publisher had failed to give adequate notice of abridgment or change of title on the basis of an inspection of the books themselves without other evidence. While the disclosures made by petitioner would appear more nearly adequate than those in the cited case, we cannot hold the Commission lacked basis for its finding here. It would be of no moment that we might think the legends sufficient for ourselves. Whether or not we are entitled to claim places in the Examiner's category of "the more intelligent, more experienced, careful prospective buyer," at least we are used to looking at books; and, what is more important, we necessarily examine petitioner's with eyes already alerted to the problem. Yet, with all this, we cannot escape the impression of subtle underplaying, at least on some covers. It is sufficient that we cannot say the Commission lacked a rational basis for its finding, and the order based thereon.

The Commission was not bound to accept the opinion evidence of petitioner's witness even though petitioner asserts this was uncontradicted. No real basis was laid for the expert's conclusion, the interviews having dealt generally with book-buying habits and having made no attempt to determine whether buyers of petitioner's books were actually deceived. Moreover, there was much in the witness' testimony that tended against his conclusion. He testified that "The range of time that the prospective purchaser is in physical or visual contact with the paperbound book ranges from one minute to ten minutes" with the average approximately four; that the buyer "spends most of his time looking at the cover and he will look in general at the center of the page where he generally expects to find the title"; that "he will then look for the author, if it is a familiar author"; and that for this purpose he first looks at the top of the cover and only afterwards at the bottom. Most

purchasers "will actually pick up the book and riffle through the pages," with no uniformity as to which pages are viewed and no tendency to look particularly at the pages where petitioner printed notice of retitling. The Trial Examiner was justified in finding that the attention of the one or two minute purchaser following this routine might not be attracted to the legends of abridgment or retitling, and the Commission's responsibilities extend to him and not simply to the "average" four minute buyer or the careful, indecisive or dilatory purchaser who takes ten. As was said in General Motors Corp. v. Federal Trade Commission, 2 Cir., 1940, 114 F. 2d 33, 36 certiorari dtnied 1941, 312 U.S. 682, 61 S.Ct. 550, 85 L.Ed. 1120:

"But if the Commission, having discretion to deal with these matters, thinks it best to insist upon a form of advertising clear enough so that, in the words of the prophet Isaiah, 'wayfaring men, though fools, shall not err therein,' it is not for the courts to revise their judgment."

See Charles of the Ritz Distributors Corp. v. F. T. C., 2 Cir., 1944, 143 F.2d 676, 679.

■ (2) Petitioner claims it cannot be required to comply with the Commission's order consistently with the due process clause of the Fifth Amendment, because of the Commission's failure to establish detailed standards of the disclosure required, citing Smith v. People of State of California, 1959, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205; Scull v. Commonwealth of Virginia, 1959, 359 U.S. 344, 353, 79 S.Ct. 838, 3 L.Ed.2d 865, and other cases. The Commission says petitioner may not be heard to argue this since, as the Commission alleges, the claim was not made before it. We find it unnecessary to pass on the Commission's contention in bar since we consider petitioner's claim unfounded on the merits. Petitioner's criticism relates especially to the requirement that the legends be printed "in clear, conspicuous type." The orders approved in Hillman Periodicals, Inc. v. F. T. C., supra, and New American Library of World Literature v. F. T. C., supra, contained those same words. It is by no means plain that more detailed specification by the Commission was feasible. What type is needed to give adequate notice of abridgment or retitling on a cover is not a constant but a variable, depending on the color of the legend, its place, the size and color of the cover and other printed material, the presence or absence of illustrations, and other things. We shall not require the Commission to attempt to devise a universal formula that would take account of all these permutations, at least in the absence of evidence that compliance with the order as framed constitutes an undue burden.

The petition to review is denied and the Commission's order is affirmed and shall be complied with. 15 U.S.C.A. § 45(c).

MOORE, Circuit Judge (concurring in the result).

Were this case to come before me *de novo* my views would be entitled "dissenting" and not "concurring." However, to follow, and be consistent with, the decisions on the subject in this circuit,[1] I concur in the result. Nevertheless, although I am apparently a "voice of one crying in the wilderness" (to use —also for the purpose of consistency— the same prophet (Isaiah)) as we have quoted before in this circuit (General Motors Corp. v. Federal Trade Commission, 2 Cir., 1940, 114 F.2d 33, 36, certiorari denied 1941, 312 U.S. 682, 61 S.Ct. 550, 85 L.Ed. 1120), I cannot accept the conclusion that the words "in clear, conspicuous type" convey a sufficiently clear standard as to what constitutes adequate disclosure so as to enable a publisher to understand what it is to do to comply

[1]. Hillman Periodicals, Inc. v. Federal Trade Commission, 2 Cir., 1949, 174 F. 2d 122; New American Library of World Literature, Inc. v. Federal Trade Commission, 2 Cir., 1954, 213 F.2d 143.

either with the laws or the Commission's orders. Nor can I agree that a single trial examiner of the Commission without the aid of any testimony, expert or otherwise, is the one person in the entire judicial and quasi-judicial system best able to comprehend the approach of that non-existent character, the "average" reader, in his purchase of a "pocket" book.

Flattered momentarily by the majority's suggestion that judges may be more intelligent and experienced but quickly reduced in scale by the conclusion that it is "of no moment that we might think the legends sufficient for ourselves," I find myself trying to cope with the answer to "clear and conspicuous" to whom? Certainly they are to us because the majority concedes that the legends on the covers were "easy to read," were not "illegible" and "in no wise unreadable." These findings would naturally lead to the conclusion that the Commission's order has been adequately complied with. But how is the publisher to know? No standards for compliance have ever been suggested. No size of type is specified, no special colors are required, no particular location on the cover or inside pages is directed. Why should a trial examiner decide for or against compliance merely because he concludes that the publishers in printing their books should cater to "the one or two minute purchaser"? What intellectual level is the Commission serving or protecting? What physical impairments are to be honored? A 20–20 vision reader may well observe legends which those of us burdened with trifocal lenses would never see.[2] If full and complete understanding is to be the test, how does the Commission know that a "substantial portion" of readers comprehend the meaning of "unabridged" even if in one inch letters? Furthermore, if prevention of deception is the goal, how is it possible to reconcile with the contents the lurid[3] chromo covers depicting an attractive young woman scantily attired about to meet her death, or suggestively "worse than." Disappointed purchasers will seldom discover their unfulfilled hopes in a one or two minutes riffling of a book at a newsstand or drug store.

The Commission argues that it is not "required to specify in detail 'what constitutes adequate disclosure of abridgment or of a change of title.'" I find this a rather cavalier attitude for a public agency to assume. In many fields it is difficult, in fact often impossible, to specify standards of unfair or deceptive acts or practices. These words frequently "do[es] not admit of precise definition" (Federal Trade Commission v. Raladam Co., 1931, 283 U.S. 643, 648, 51 S.Ct. 587, 590, 75 L.Ed. 1324). Where this be the case, broad discretion should be granted to the Commission whose deservedly praiseworthy efforts act as an effectual protective buffer between an often misinformed and gullible public and merchants who for their own commercial advantage would exploit these characteristics by extravagant and unfounded representations. On the other hand where, as here, "clear and conspicuous" can be given more finite measurements, standards of type and print should not be kept vague and indefinite so as to make conformity with the Commission's orders a matter of guesswork by the publisher and possible whim and personal opinion by individual trial examiners.

Publishers about to print thousands of copies at considerable cost should not be put in this predicament of uncertain-

2. The trial examiner apparently sets his standard of clarity so that "he who runs may read." Is not our present pace of life sufficiently rapid that we do not have to add to it by forcing publishers of books to gear themselves to the running reader? If ever there is to be a moment for quiet reflection it might well be spent with a book reflectively selected and not snatched like a mail sack by a speeding mail train.

3. Where the majority obtained "the impression of subtle underplaying, at least on some covers," I am at a loss to understand.

ty. It matters little what the rules are so long as they are decreed with sufficient clarity that they may be followed. The same principle of consistency, however, applies here. For many years the position of this circuit has been made known to publishers by our decisions.[4] The law has been stated and should be followed. Whether publishers should be forced with hat in hand to wait upon the Commission in advance of every publication and secure their approval of the format of each book is, in my opinion, highly questionable. But, as previously indicated, we have decided that these so-called standards (vague as I believe they are) are adequate; the law at least in this field is sufficiently definite and requires affirmance of the Commission's order.