## UNITED STATES v. 116 BOXES, etc. ARDEN ASSORTED CANDY DROPS.

### Misc. Civ. No. 7331.

United States District Court
D. Massachusetts.

Nov. 12, 1948.

William T. McCarthy, U. S. Atty. and Alfred G. Malagodi, Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

Joseph J. Gottlieb, of Boston, Mass., and Leonard Franklin, of New York City, for claimant.

WYZANSKI, District Judge.

This is a libel brought under the Federal Food, Drug, and Cosmetic Act of 1938, 52 Stat. 1040, 21 U.S.C.A. § 301 et seq. for the condemnation of packages of confections manufactured and shipped in interstate commerce by Up-To-Date Candy Manufacturing Company. These packages contain either "Arden Assorted Candy Drops" or "Arden Root Beer Drops" or "Arden Lemon Drops" or "Arden Kandy Mints".

The libel charges misbranding within the meaning of § 403(d) of the Act, 21 U.S. C.A. § 343(d) which provides that "A food shall be deemed to be misbranded * * * If its container is so made, formed, or filled as to be misleading."

It is conceded that the packages were shipped by the company in interstate commerce. The only question is whether there was misbranding within the statutory definition.

All the packages are substantially alike despite differences in the particular type of candy. All the types of candy are manufactured in a uniform size and style of lozenge. The company has changed the style over the years. In the packages seized, the style used is a slightly rounded rectangle which creates no peculiar packaging problem.

Each box measures in inches: $3\frac{3}{4}$ x $2\frac{1}{2}$ x $1\frac{1}{4}$. A box is intended to sell at retail at five cents. Each bears a legend stating the name of the drop and showing the weight of the box as $1\frac{1}{2}$ ounces. And in fact all the boxes contained candy which weighed at least $1\frac{1}{2}$ ounces. There is no statement as to the number of pieces of candy. Most of the boxes contain 17 pieces. Some, however, contain 18 or 19. When 17 pieces are in the box and a reasonable time has elapsed since manufacture, the candy settles so that there is an average air space in the box of 33%.

Each box in evidence was packaged by a standard packaging machine, manufactured by a third party, of the type used by a majority of leading concerns packaging candy or cough drops intended to retail at five or ten cents. Such a packaging machine is made with only slight variations necessary for each concern. The machine works in conjunction with a conveyor belt. The belt carriers a flat piece of cardboard to the machine, which folds it into a box with an opening left at one end. The machine then inserts wax paper, turns the folded box into an upright position and passes it under a rotary disk. Above this disk pieces of candy are placed. The disk has twenty apertures which may be plugged up to regulate the number of pieces which will drop into each box. Back of the place where the box stands under the disk is an agita-

tor which jars the box during the time candy pieces are falling through the disk. This aids the candy to settle in the box so that more pieces can fall into the box. After being under the disk, the box moves to a finger-like contraption which folds over the wax paper and closes the box.

The process of manufacture is supervised by an operator who watches for spillage as the candy falls to the floor from the disk or the box. The operator discards boxes which are overpacked. He does not add drops by hand. If he were to do so, he could often make the box contain at least 20 drops of the present style. Without such additions by hand, it is admittedly practical to set the disk for at least 17 such drops. If the disk is set at 18 such drops, the machine occasionally jams. Moreover, at 18 drops the number of boxes which are overpacked and must be discarded is between 5% and 10% of the total number of boxes filled.

There was no evidence as to how many pieces of candy any consumer would expect to receive from a box of the type here involved.

■ Upon the basis of the foregoing facts and for the following reasons I conclude as a matter of law that the shipment did not violate § 403(d) of the Act and that the libel should be dismissed without costs and the boxes delivered to the shipper.

■ The Act (which incidentally has not been interpreted by any official regulation or administrative pronouncement) prohibits the shipment of a package of candy which is in fact so slack-filled as to be misleading, even if the package correctly states the weight of the contents, United States v. Cataldo, 1 Cir., 157 F.2d 802. The question whether the package is misleading is a question of fact. And the standard is not whether experts or men of peculiar training, experience, shrewdness or sophistication would be misled. Cf. Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 116, 58 S.Ct. 113, 82 L.Ed. 141. The standard is whether the container would be likely to mislead the ordinary purchaser of this type of merchandise, not one who was particularly attentive or prudent.

■ But I do not go so far as to accept the argument, advanced by the Government, that the question is whether the package is so filled as to mislead an average five-year-old child who might expect the box to be filled to overflowing. Infantile anticipation is not the test. Rather it is what would be expected by an ordinary person—not necessarily an adult—who has been led to expect and desire machine-packing. Such a customer knows machine-packing is more sanitary than hand-packing. He knows it results in economies of mass production and that these economies are in some measure likely to be passed on to the ultimate consumer. Moreover, from buying various types of five-cent candies, cough drops and lozenges packed by machine in standard rectangular containers, he has come to expect some slack or air space. Indeed, he recognizes that tight packing would often solidify into a mass pieces which he prefers to have separate. It is the expectations of a person who has that common degree of familiarity with our industrial civilization which furnish the standard which Congress intended to be applied. Congress had no intention to require abandonment of reasonably efficient methods of mass packaging by machine. See Senate Committee on Commerce, 73rd Cong., Report No. 493, p. 9; and Senate Committee on Commerce, 74th Cong. 1st Sess., Report No. 361, p. 9.

In the case at bar no evidence was introduced as to what an ordinary non-infantile purchaser would expect. But in my view he would not expect any particular number of lozenges. So long as he received ordinary lozenges not obviously so eccentric in shape as to result in peculiar packing difficulties, and so long as he received approximately as many of these lozenges as could conviently be packed in a standard rectangular carton by machine, he would not in my opinion be misled.