**UNITED STATES of America,**
**Plaintiff,**

v.

**174 CASES, etc., Containing 24 Ten Ounce Packages LABELLED IN PART "DELSON THIN MINTS * * * Delson Candy Co., New York, N. Y.", Claimant.**

**Civ. A. No. 80–59.**

United States District Court
D. New Jersey.

Feb. 10, 1960.

---

Chester A. Weidenburner, U. S. Atty., by William E. Sellinger, Asst. U. S. Atty., Newark, N. J., for the Government.

Leo Rosenblum, Jersey City, N. J., for claimant.

WORTENDYKE, District Judge.

By its libel of information, the Government prayed seizure and condemnation of an article of food consisting of 174 cases, more or less, each containing 24 ten ounce packages of an article labelled in part "Delson Thin Mints, Chocolate Covered * * * Delson Candy Company * * * Newark, New York * * *." Pursuant to warrant of seizure, 91 cases of the article were attached by the United States Marshal, who duly served upon the person in charge of the place where the goods were stored, a monition addressed to the owner thereof which was thereafter duly published. In due course a notice of claim was filed by Richard H. Adelson, one of the partners trading as Delson Candy Company, in behalf of said firm, making claim to the articles attached and praying leave to defend against the complaint for condemnation.

The proceeding is brought pursuant to the provisions of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 301 et seq., and the complaint charges that the article seized was misbranded when introduced into and while in interstate commerce, within the meaning of the Act, 21 U.S.C.A. § 343(d), in that "its container is so filled as to be mis-

leading, since the use of two hollow dividers between each section of candy and one hollow divider at each end of the container utilizes available space in the container so that the candy occupies only about 45 percent of the volume of a container of this size * * *." In part, the basis alleged for the condemnation sought is that the individual container of the candies is "slack-filled" to a degree misleading to a prospective retail consumer.

The pretrial order describes the article and containers as "chocolate covered mint candies, in boxes containing less units of the product than the exterior dimensions of the box would otherwise permit, by separating by hollow cardboard partitions, portions of the product contained in the package." The Government concedes that the net weight of claimants' candy contained in each package is as represented on the exterior of the package; it contends nevertheless that the use of such a container "misleads the average intending purchaser into the assumption that the contents of the package is a maximum amount of individual mint discs which the interior cubic contents of the package would permit." The Government also takes the position that it did not expect or require any such container to have its interior volume *completely* filled by the pieces of candy enclosed therein. Claimant admits the manufacture, packaging, and shipment in interstate commerce of the seized article, but denies that its packages were either intended to or in fact did deceive the public. On the contrary, claimant contends that the design of the container complained of was adopted solely for the purpose of affording a more efficient and protective package and that it constitutes a recognized advance in the art of candy box design. More specifically, the claimant asserts that the hollow dividers and the type of end structure in and of each of the candy boxes serves and was designed to function as a means of protecting the individual pieces of candy from the effects of pressure and shock in shipment. Both parties recognize that this case presents the single issue of whether the method of packaging employed by the claimant is misleading to the public generally.

Besides denying that its container is misleading, claimant asserts that the provisions of § 343(d), as applied to claimants' container, would be unconstitutional if it were to be held to be misbranded. Claimants assert that the provisions of 21 U.S.C.A. § 343(d) are so vague, indefinite and uncertain as to permit the taking of claimants' property without due process of law, in violation of the Fifth Amendment of the United States Constitution. The issue of constitutionality of the statute invoked was argued to the Court preliminarily to the presentation of evidence upon the issues framed by the pleadings, but decision upon this preliminary question was reserved by the Court for determination after hearing all of the evidence. Where there is a possibility that a case may be disposed of on other than constitutional grounds, a constitutional adjudication must be deferred; it being the duty of a Federal Court to avoid an unnecessary decision of a constitutional question. McLarty v. Borough of Ramsey, D.C.N.J.1958, 166 F.Supp. 291, affirmed 3 Cir., 1949, 270 F.2d 232.

### The Accused Container

Claimants' individual candies are, as stated, chocolate covered mints, circular in shape, having one side slightly convex and the opposite side flat. They are packed and sold in rectangular "corset-type" boxes with the plane of the individual piece of candy at right angles to the long dimension of the container. The outside dimensions of each box, including the wrapper, are 11.56″ x 1.94″ x 1.75″, comprising an exterior volume of 39.2 cubic inches, but an interior volume of the lower box in which the candies are packed of 30.8 cubic inches. The candy-carrying interior of the lower box is divided into three compartments by means of hollow transverse dividers of cardboard, and each end of that portion of the box consists of a hollow recess

extending longitudinally into and transversely across the interior. The aggregate volume of the two hollow dividers and the two hollow ends is 5.4 cubic inches. Each of these boxes contained a total of 30 candy mints,—ten in each of the three compartments or sections,—but not so snugly packed in each section as to preclude the addition of one mint to each compartment. The exterior of each box was marked with the correct net weight of the candy contents in readily legible characters, and the price charged for the box of candy was competitive with prices throughout the market for similar quantities of merchandise of like quality.

It is readily apparent from inspection of the interior of any of claimants' filled boxes that the compartmentation of the box interior and the presence of the hollow dividers and exteriorly recessed ends, prevents all of the packed candies from becoming an undivided continuous mass, and also prevents the uninterrupted conduction of shock throughout such mass. Moreover, it is equally obvious from an inspection of the container that kinetic force applied to either end of the box, which would otherwise be conducted longitudinally throughout its length, is in some degree absorbed by the hollow ends and hollow partitions.

There were placed in evidence during the trial, boxes of candies of like kind, generally similar exteriorly in shape to the containers herein accused, in some of which there were no interior compartmentation, nor any interiorly extending recess at either end, but in which each unit of candy was separated from others by a square sheet of waxed paper. Still another type of container for similar candy was in evidence, which provided a three-section interior compartmentation, by means of "chocolate-board" (cardboard) partitioning without the hollow characteristics of the partitions and ends employed in the accused boxes. Much testimony was presented respecting the efficacy of the different types of boxes to protect the contained candy from damage in course of shipment; but in none of the types of containers presented to the Court in evidence was one hundred percent of the interior volume of the box occupied by candy. There was, moreover, evidence to the effect that the volume of each candy unit was affected by temperature as well as by the degree of freshness or staleness of the article. Thus, the extent of occupancy of the interior of the box, by the candy, was a variable dependent upon exterior circumstances.

By removing the hollow ends and dividers, and using single thicknesses of cardboard to serve as dividers and to fill in the ends, a witness for the Government was able to add eleven mints to the contents of the lower box. This, of course, substantially increased the weight of candy in the package. Another Government witness, offered as an expert in surveying consumer opinion attitude, expressed the opinion that from twenty to twenty-five percent of retail consumer purchasers were influenced in selecting a commodity by the size of its package, rather than by its price. Another Government witness testified that he purchased a box of Delson Thin Mints, shortly before the trial, at a self-service supermarket in New York City, and that in selecting the package he noticed that it was price-marked 35¢. As he emerged from the place of purchase, he was interviewed by an investigator for the Federal Food and Drug Administration, who had observed him making his purchase. The investigator opened a package of Delson Thin Mints in the presence of this witness, and upon being asked whether he found in the package what he had anticipated, he testified that he had expected to see far more mints in the package than there were shown to be. Several other witnesses testified for the Government to a similar effect, respecting similar experiences. A Doctor of Philosophy in psychology testified for the Government that he had presented to a succession of individuals samples of types of candy boxes generally similar exteriorly to the package of Delson, and found that each of these persons tended

to over-estimate, before opening, the number of pieces of candy contained in each box. Upon these findings this witness concluded that in making judgments of contents from an external observation of the package, the length of the box exerted a greater influence upon the judgment of the estimator than did the indicated net weight of the contents. Another Doctor of Philosophy, university professor and author in the field of economics, expressed the opinion that claimants' container was a slack-filled container because it was possible for it to hold more pieces of candy than were found to be therein contained. Testimony was also adduced both by the Government and by the claimants respecting the efficacy of the hollow partitions and ends in claimants' boxes, in reducing the hazard of crushing and shock damage to the candy contained in their package.

For the claimants a consultant on industrial package design testified that the controlling criteria governing the selection of a form of package are principally two in number, viz.: (1) trade and consumer acceptance; and (2) protection of the product contained therein. It was the opinion of this witness that the hollow partitions and ends were intended for and did achieve the protection of the contents against end-to-end and side-to-side shock. The designer of the Delson package testified that the form and construction adopted was for the purpose of eliminating breakage, and that he was aware of no intention on the part of claimants to mislead the purchaser by the use of that form of box.

■■ From the evidence I conclude that the type of container construction employed by the claimants, which the Government accuses in this case, is efficacious to a degree for the protective purposes contended for by the claimants and was not adopted and is not being used for the purpose of deceiving prospective purchasers respecting the contents of the container. I further find that similar interior box construction is employed by two other nationally known

manufacturers of chocolate mint candies.

The facts in this case are generally similar to those in United States v. Cataldo, 1 Cir., 1946, 157 F.2d 802, which affirmed the action of the District Court in dismissing a libel brought under the Federal Food, Drug and Cosmetic Act of 1938, 52 Stat. 1040, 21 U.S.C.A. § 301 et seq., for the condemnation of cartons of boxes of candy shipped in interstate commerce. The libel there charged that the food was misbranded within the meaning of § 403(d) of the Act (21 U.S.C.A. § 343(d)), in that the container was so formed and filled as to be misleading, because the boxes could hold approximately fifty percent more candy than was found therein. In this case, each box measured 1¼″ in width by 2″ in length, and about 1″ in depth, and contained one piece of candy, a half-ounce in weight. Each piece of candy was wrapped with a piece of card wafer and measured approximately 1″ in width, 1⅞″ in length, and a half-inch in depth. The Appellate Court stated that the question presented was "whether the containers of the article were so made, formed or filled as to be misleading." [1 Cir., 157 F.2d 803.] The evidence on the trial in the cited case disclosed that the average dimension per piece of candy was 1.05 cubic inches, the internal volume of the small container was 2.32 cubic inches, and the commodity occupied 45.3 percent of the entire volume of the carton. At page 804 of the opinion of the Court in Cataldo, we are reminded that "[w]hether or not over 50 percent space in a particular package of candy was slack-filling is a question of fact for the district court to decide." The opinion recites, with apparent approval, a statement of the District Judge that "it would be 'stretching the statute all out of proportion to its purpose if it were to find on the evidence in this case, dealing with this particular nougat, the way it is shaped and wrapped, that that container was so made, formed or filled as to be misleading', and that there was nothing 'in the shape and size of the larger pack-

age or the smaller packages that would be misleading to a person.'" The District Court was, therefore, affirmed in its conclusion that it could not be said as a matter of law, either that the product had been misbranded, or that its container had been so made, formed or filled as to be misleading.

In another similar case, United States v. 116 Boxes, etc., Arden Assorted Candy Drops, D.C.Mass.1948, 80 F.Supp. 911, the Government unsuccessfully sought condemnation of packages of candy charging misbranding under § 403(d) of the Act. In that case also the package was accused of being slack-filled, where, as a result of the settlement of the contents there was an average air space left in the box after filling of 33⅓ percent. There was no evidence as to how many pieces of candy any consumer would expect to receive from a box of the type complained of. The District Judge there concluded, as a matter of law, that the seized shipment did not violate the Act and that the libel should be dismissed. The Court in that case said (at page 913): "The question whether the package is misleading is a question of fact. And the standard is not whether experts or men of peculiar training, experience, shrewdness or sophistication would be misled * * *. The standard is whether the container would be likely to mislead the ordinary purchaser of this type of merchandise, not one who was particularly attentive or prudent * * *. In the case at bar no evidence was introduced as to what an ordinary non-infantile purchaser would expect. But in my view he would not expect any particular number of lozenges. So long as he received ordinary lozenges not obviously so eccentric in shape as to result in peculiar packaging difficulties, and so long as he received approximately as many of these lozenges as could conveniently be packed in a standard rectangular carton by machine, he would not in my opinion be misled."

In the case at bar, despite the evidence which indicated that certain purchasers of the accused containers were "surprised" to find when boxes were opened that there were not more candies therein, and despite the psychological effect of length or size of container upon the inclination of a consumer to purchase a food product, I am not persuaded by the evidence in this case that the Government has carried the burden of proof cast upon it, that the seized articles are misbranded under the section of the statute relied upon. The case is, in my opinion, lacking in adequate proof that the average adult, of normal intelligence, would be induced by the exterior appearance of the accused containers to buy a box of Delson mints with the expectation that it would contain any particular number of individual candies. The evidence in this case is overwhelmingly persuasive that the exigencies of machine filling, handling and shipping of separate pieces of candy in interstate commerce require that less than the total interior volume of the box in which they are contained be occupied by the candies. The accused method of packaging here under consideration involves, within the container, spaces unoccupied by candy. It also appears that the boxes of claimants' candy in evidence, of which the Government complains, would permit the inclusion of more pieces of candy than they customarily contain. The net weight of candy in each package however is disclosed on the exterior thereof, and there is no evidence that the retail price charged for the box of the candy is disproportionate to the net weight nor inappropriate to the quality of the contents. I fail to find in the evidence that the containers used by the claimants are made, formed or filled in such a manner as to be misleading within the contemplation of 21 U.S.C.A. § 343(d).

In view of the foregoing findings and conclusions, which shall be deemed compliance with F.R.Civ.P. 52, 28 U.S.C.A., it becomes unnecessary to consider the constitutional question upon which decision was reserved at the trial. I, therefore, conclude that the seized articles are not misbranded, and direct that

they be restored to the claimants, and that the libel herein be dismissed.

An appropriate order may be presented according with the views herein expressed.