287 F.2d 246
 UNITED STATES of America, Appellant,
v.
174 CASES, MORE OR LESS, Each Containing 24 10-Ounce Packages of an Article Labeled in Part: "DELSON THIN MINTS CHOCOLATE COVERED * * * DELSON CANDY CO. * * * NEW YORK, N. Y."
 No. 13298.
 United States Court of Appeals Third Circuit.
 Argued December 5, 1960.
 Decided February 28, 1961.
 Rehearing Denied March 22, 1961.
 
 William E. Sellinger, Asst. U. S. Atty., Newark, N. J., Chester A. Weidenburner, U. S. Atty., Newark, N. J., William J. Risteau, Attorney, Department of Health, Education, and Welfare, Washington, D. C., on the brief, for appellant.
 Richard P. Brown, Jr., Philadelphia, Pa., J. Wesley Oler, Philadelphia, Pa., Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel, for appellee, Delson Candy Co.
 Before BIGGS, Chief Judge, and GOODRICH and FORMAN, Circuit Judges.
 BIGGS, Chief Judge.
 
 
 1
 This is an appeal by the United States from an order of the United States District Court for the District of New Jersey dismissing a libel of information against a number of cases of chocolate covered thin mints manufactured and shipped by the appellee-claimant, Delson Candy Company, in the spring of 1958.
 
 
 2
 Under Section 403(d) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 343(d), food must be held to be misbranded "if its container is so made, formed, or filled as to be misleading." The standard set up by Judge Wyzanski in United States v. 116 Boxes, etc., D.C.D.Mass.1948, 80 F.Supp. 911, 913, is "whether the container would be likely to mislead the ordinary purchaser of this type of merchandise * * *." We think this standard is the correct one.
 
 
 3
 The opinion of the court below, 180 F.Supp. 863, sets out fully the size, arrangements, and physical set-up of the chocolate-mint boxes which are the subject of the suit. It sums up the evidence of the United States that the containers were so slack-filled as to be misleading and that their structure rendered them no more effective but perhaps less effective in safeguarding their contents than less misleading forms and also the claimant's evidence that its containers were a more efficacious safeguard for its product than other less deceptive containers would have been.
 
 
 4
 There are two ways in which a trial court may hold for the claimant in cases such as that at bar. First, the court can find as a fact that the accused package is not made, formed, or filled in such a way that it would deceive the ordinary purchaser as to the quantity of its contents. See United States v. Cataldo, 1 Cir., 1946, 157 F.2d 802; United States v. 116 Boxes, etc., supra. Alternatively, the court may find as a fact that even though the form or filling of the package deceives the ordinary purchaser into thinking that it contains more food than it actually does, the form and filling of the package is justified by considerations of safety and is reasonable in the light of available alternative safety features.
 
 
 5
 Did the district court in the present case make either of these findings? We conclude that it did not do so.
 
 
 6
 First, the court below did not find that the Delson package did not deceive the ordinary purchaser by making him think that it contained more than it actually did contain. The court stated in respect to this issue: "The case is, in my opinion, lacking in adequate proof that the average adult, of normal intelligence, would be induced by the exterior appearance of the accused containers to buy a box of Delson mints with the expectation that it would contain any particular number of individual candies." 180 F. Supp. at page 868. This statement is beside the point. The question was not whether the ordinary purchaser would expect to find a particular number of individual candies in the box but whether such a purchaser would expect to find more of the Delson box filled. For example, the purchaser of a crate of apples opens the crate and finds it half filled. To determine whether he was deceived we do not ask whether he expected to find a particular number of individual apples in the crate. We do ask whether he expected to find more of the crate filled. This is the pertinent question. People do not think in terms of the number of individual mints when buying them in containers.[1]
 
 
 7
 As to the second issue we point out that evidence introduced by the United States tended to show that only 44% of the total volume of the accused container and that only 75% of its practical volume was filled with mints; that the remainder of the usable space was taken up with hollow cardboard dividers and hollow end pieces. The United States introduced substantial uncontradicted evidence to show that purchasers of the mints, opening the boxes, expected to find far more mints in them than were there. In view of this it is obvious, if there were nothing more in the case, that the containers might well fall within the interdiction of the statute.
 
 
 8
 But, and this is a point which we must emphasize, a showing by the United States that the ordinary purchaser, on viewing a container, will believe that it contains significantly more food than in fact it does contain, and was deceived, cannot be dispositive of the issues of such a case as that at bar. A claimant may go forward and show, as the claimant has attempted to do here, that the circumstantial deception was forced upon it by other considerations such as packaging features necessary to safeguard its product. But safety considerations, before they can be held to justify a slack package must be shown to be reasonably necessary in the light of alternative methods of safeguarding the contents. For example, some padding is obviously necessary in egg crates to safeguard the eggs. But, a two-inch cotton cushion between each of the eggs would certainly not be justified even though such excessive padding would serve fully the ends of safety. The deception would outweigh the asserted justification of safety when viewed in the light of a more reasonable alternative such as cardboard dividers.
 
 
 9
 The trial court did not make any finding that the Delson slack package was justified by considerations of safety. The court stated only: "From the evidence I conclude that the type of container construction employed by the claimant[s], which the Government accuses in this case, is efficacious to a degree for the protective purposes contended for by the claimant[s] and was not adopted and is not being used for the purpose of deceiving prospective purchasers respecting the contents of the container." 180 F.Supp. at page 867. The court did find that the container is "efficacious to a degree".[2] But this is not enough. The court has to find that the container's efficacy outweighs its deceptive quality. Further, it has to find that the available alternative efficacious means are not less deceptive than those actually employed.
 
 
 10
 Since the court below has not made the necessary findings of fact to support the legal conclusions which it has reached, we will vacate the judgment and remand with the direction to proceed as the facts and the law require.
 
 
 
 Notes:
 
 
 [1]
 We think that the court's misconception of the issue derives from language employed in United States v. 116 Boxes, etc., D.C.D.Mass.1948, 80 F.Supp. 911, 913
 
 
 [2]
 The court also said: "The evidence in this case is overwhelmingly persuasive that the exigencies of machine filling, handling and shipping of separate pieces of candy in interstate commerce require that less than the total interior volume of the box in which they are contained be occupied by the candies. The accused method of packaging here under consideration involves, within the container, spaces unoccupied by candy" 180 F.Supp. at page 868. This statement is fully supported by the evidence but it cannot carry the case for the claimant. The United States does not argue that the box had to be packed tight. It has argued that Delson mints could have been packed tighter and yet could have been safe, while not misleading the consumer