**UNITED STATES of America,**
**Libellant,**

v.

**174 CASES, MORE OR LESS, each containing 24 10-ounce packages of an article labeled in part: (package) "DELSON THIN MINTS CHOCOLATE COVERED * * * Delson Candy Co. * * * New York, N. Y. * * *",**
**Claimant.**

**Civ. A. No. 80–59.**

United States District Court
D. New Jersey.

June 26, 1961.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by Raymond W. Young, Asst. U. S. Atty., North Bergen, N. J., and William J. Risteau, Dept. of Health, Education and Welfare, Washington, D. C., for the Government.

Leo Rosenblum, Jersey City, N. J., for claimant; Richard P. Brown, Jr., J. Wesley Oler and Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.

---

WORTENDYKE, District Judge.

On appeal from this Court's order of February 23, 1960 dismissing the Government's libel of information in this case, the Court of Appeals, 3 Cir., 1961, 287 F.2d 246, 248, vacated the judgment and remanded "with the direction to proceed as the facts and the law require" because of this Court's failure to make the necessary findings of fact to support the legal conclusions which it reached. This Court's opinion in lieu of findings of fact and conclusions of law (F.R.C.P. 52, 28 U.S.C.) was filed February 10, 1960, and is reported at D.C., 180 F.Supp. 863. The Court of Appeals concluded that this Court failed to make either of the following findings: (1) "that the accused package is not made, formed, or filled in such a way that it would deceive the ordinary purchaser as to the quantity of its contents;" (2) "that even though the form or filling of the package deceives the ordinary purchaser into thinking that it contains more food than it actually does, the form and filling of the package is justified by considerations of safety and is reasonable in the light of available alternative safety features." As the present writer reads the appellate Court's opinion, one or the other of the foregoing findings of fact is a *sine qua non* to a conclusion of law that claimant's container was not misbranded under 21 U.S.C.A. § 343(d).

In compliance with the directive of the United States Court of Appeals for the Third Circuit, I find the following facts in this case:

1. Claimant's chocolate covered thin mints are approximately circular, but, unlike competitors' mints, are dome-shaped, with one side convex and the other side flat, measuring approximately 1.5 inches in diameter and .28 of an inch in thickness.

2. The accused package or container in which the mints are packed is a rectangular cardboard box, the outside dimensions of which, inclusive of the wrapper, are 11.56″ x 1.94″ x 1.75″, comprising an exterior volume of 39.2 cubic inches.

3. There are three compartments or sections of mints in the accused package or container, and each compartment contains ten mints, standing on edge in a horizontal row, or 30 mints in all per box.

4. Each compartment of the accused package is separated by hollow transverse dividers of cardboard which, in the process of manufacturing the box, are stamped from a cardboard sleeve and locked or anchored in place by tabs coming up from the bottom; and each end of the box has a hollow recess extending longitudinally into and transversely across the interior.

5. The aggregate volume of these dividers and the ends is 5.4 cubic inches.

6. The slack in the accused packages would permit the addition of one more mint in each of the three compartments of the box, but this is a normal amount of slack, and it exists in the three compartments of the A. & P. Tea Company's "Warwick" package of chocolate covered thin mints which the Government sought to contrast favorably over claimant's package.

7. Having in mind that the accused container is rectangular and that the mints are approximately circular, 83% of the practical volume of the package is filled with mints.

8. If the accused package were stripped of its dividers and ends, there would be room for six more mints.

9. Only about 25% of those interviewed by a market research concern used by the Government were motivated in their choice of packages by size rather than price.

10. A survey of purchasers of various packages of chocolate covered mints, including the A. & P. Tea Company's "Warwick" package, which uses single-thickness cardboard dividers, showed that the public grossly overestimated the number of mints in all of the packages.

11. The only purchasers of claimant's package called as witnesses by the

Government were Willock, Zucker, Grosso and Calistro, each of whom after purchasing claimant's package, was interviewed by a Food and Drug Administration employee.

12. It was not shown how many other purchasers of claimant's package were interviewed by the Food and Drug Administration nor was there any evidence that the reactions of these witnesses to the package were typical.

13. Some of these witnesses were "surprised" to see dividers in the box, or "disappointed" in the amount of candy in the box; some had no idea how many mints they expected to find in the package; others expected to find only as many mints as were indicated in the net weight marked on the outside of the box; all would have been displeased on opening the package to have found the mints broken or crushed. One of these witnesses who had not expected to find the dividers in the box, admitted that he had not been deceived a short time previously when he purchased a box of Terry chocolate covered thin mints, although it was shown that the Terry box also uses hollow dividers. He did not feel misled by a demonstration package of the same size, with the mints packed flat in four layers, although it actually contained two less mints than the accused package. Another of these witnessees admitted that his idea as to the number of mints came simply from the stripes on the box wrapper.

14. Three out of four of the largest manufacturers of chocolate covered thin mints in this country pack them in containers using hollow rather than single-thickness dividers. Hollow double-wall packaging is also widely used for other products in addition to chocolate covered thin mints.

15. The Government admitted in its answers to interrogatories that it had no record of any member of the public being deceived by the accused container; that it had received no complaints about the container from any city, county or state, or other local regulatory officials; and that the only complaint it had received concerning the container was from Deran Confectionery Co., a competitor of claimant. Claimant itself also received no complaints concerning the accused package during the years it has been in use. Sales of the accused package have increased in those years.

16. The correct net weight of the candy is disclosed on the wrapper of the accused package, and there is no evidence that the retail price charged for the package is disproportionate to the net weight or inappropriate to the quality of the contents. The claimant has acted in good faith, with no intent that the package should mislead purchasers.

17. The accused package is not so made, formed or filled as to deceive the ordinary purchaser as to the quantity of its contents. It is not misleading or misbranded.

18. Chocolate covered thin mints have always presented very difficult and troublesome handling problems in the industry. Claimant's chocolate covered thin mints, being dome-shaped rather than flat on both sides, are even more fragile than most of those of its competitors. They are shipped all over the United States and to Canada, in trucks with other freight—at times with heavy hardware, steel pipes, and the like,—and are subjected to frequent transshipment, reshipment and interchange, all necessitating a very strong package. A & P.'s "Warwick" packages of mints are shipped directly to the points of destination, most of which are east of the Mississippi River, only to A. & P.'s own stores, and deliveries are customarily suspended during periods of hot weather, thereby giving A. & P. a high measure of control over its product. Claimant's distribution is carried on throughout the year, to many different types of handlers such as candy wholesalers, grocery wholesalers, drug chains and drugstores, and claimant's control over its product is consequently more limited than is that of A. & P.

19. The accused package is filled by hand, but other steps in the manufacturing process are performed by machine. The wrapping of the boxes is done by a machine which cuts a foil wrapper from a roll, positions it, and then, by means of devices in the machine, conforms the completed wrapper so that when it comes out of the wrapping machine, the package is ready to go into the shipping carton. During this machine-wrapping process the package is rigidly held and pressure is exerted upon it as the foil wrapping is held on the box so that the printing may be precisely registered.

20. In the packaging of chocolate covered thin mints it is necessary to compartmentize them in order to protect them from breakage. The A. & P. "Warwick" box also has three compartments for holding the mints, and there is one and one-half inches of slack in its package. Some slack is necessary in such a package to protect the contents in shipping.

In 1934 when claimant first began to manufacture chocolate covered thin mints, they were, as in the accused package, packed in a long, narrow or corset-shaped box, with the mints standing on edge in a row, but at that time the mints were separated individually only by pieces of waxed paper. With this type of packaging, with shipments being made to greater distances, breakage was occurring and in an endeavor to correct this, claimant added a three-part divider. Despite this addition, the breakage continued, and after a temporary period during the war when claimant made a higher priced package in which the mints were packed flat, claimant adopted, in 1950, a long corset-shaped eight-ounce box. Because its competitors adopted a larger size corset-shaped box, claimant, in or about 1954, replaced its 8-ounce package with a longer corset-shaped box containing twelve ounces of mints, but having four compartments. This package was similar to the one then in use by Deran. This box also proved unsatisfactory and breakage of the mints continued. Claim-

ant next employed a long box with a three-part divider, which had three "necks" of corrugated glassine paper, holding a net weight of ten ounces of candy. Although there were 36 mints in that box, they were smaller in size than claimant's present product. That package also proved unsatisfactory after use for only about a year; claimant found that twelve mints in each of the three compartments were too many to permit safe shipment, because he continued to receive complaints from consumers of breakage. In 1956 claimant changed to a hollow divider type of package, similar to one which its competitor Terry had adopted, and holding 30 mints, but by making each piece of candy larger than the former size, the aggregate weight of the contents remained the same,—10 ounces. This package also proved unsatisfactory because, with no lateral support for the sides of the dividers, the mints tended to slip beneath the base of the dividers, with consequent breakage and claimant continued to receive complaints.

21. Claimant submitted its packaging problem to Paramount Carton Corporation, experts in the designing and manufacture of boxes, who then designed the accused package. The objective which Paramount sought to attain was to produce a box of strong construction which could be manufactured economically and conveniently.

22. In the various stages of the transition of claimant's package since 1954, the consumer has received exactly the same quantity of candy, that is, 10 ounces in each package. The accused package is stronger and more economical to manufacture than were the preceding packages used by claimant.

23. In the Government's pressure-machine tests of the accused package, and of competing Deran and "Warwick" packages, the accused container withstood greater lateral compression in the side-to-side test, but less vertical compression, than either of the other packages. In those tests the candy in the

accused package was not damaged in the end-to-end test, even after the package itself reached the failure-point in its resistence to the machine compression.

24. The hollow ends of the accused container have the functional purpose of absorbing the shock, holding the mints in a set solid position to prevent breakage. The type of divider used in the accused package, being anchored or locked to the bottom of the box, acts as a protective buttress. These hollow ends and dividers serve a functional and utilitarian purpose by affording a greater degree of crush resistance and shock protection than would single-thickness cardboard dividers and ends. The double surface of the walls of the dividers provides a better cushion for the mints, and the double thickness of the bottom helps to prevent melting from the heat which is employed in the machine-wrapping process. The accused package is better able to deliver the merchandise to the consumer in good condition than is one with single-wall dividers. The accused container can be more economically produced, using a straight line gluing machine of the fastest type available, and producing boxes at the rate of 100,000 a day.

25. Other manufacturers using single-thickness dividers in packaging chocolate covered thin mints also experienced breakage, and received complaints, even where the boxes contained only eight ounces of mints.

26. Utilizing a container the same size as that here accused, packing mints flat rather than on edge, only four layers of seven mints each will fit therein if packed to afford reasonable safety in shipment, and the aggregate of 28 mints thus packed would total only 9½ ounces, as compared with the 10 ounces of weight of the 30 mints which claimant packs in the accused package.

27. The Government's witnesses considered filled a box the same size as the accused container when it contained four layers of seven mints each, despite the fact that it actually contained two less pieces of candy than were packed in the claimant's accused container and one-half ounce less in weight.

28. Packages using single-thickness dividers and ends cannot be manufactured with the speed and economy of the accused package, nor have they proven as satisfactory in use. The available alternative means of packaging claimant's chocolate covered thin mints are not less deceptive than those actually employed in the accused package.

29. The efficacy of claimant's accused package both from the standpoint of protecting the contents and from the standpoint of economy of manufacture, outweighs its alleged deceptive quality.

Conclusions of Law

1. Claimant's accused package is not misbranded or misleading within the meaning of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 301 et seq., and is not in violation thereof.

2. If applied to bar the use of the accused package, § 403(d) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 343(d), is unconstitutionally vague, indefinite and uncertain, and contravenes the due process clause of the Fifth Amendment of the Constitution of the United States. United States v. L. Cohen Grocery Co., 1921, 255 U.S. 81, 41 S. Ct. 298, 65 L.Ed. 516; Penobscot Poultry Co. v. United States, 1 Cir., 1957, 244 F. 2d 94.

3. Claimant is entitled to have restored to it the goods which were seized by the United States Marshal in this proceeding.

4. The libel filed in this proceeding should be dismissed.

An order may be presented in conformity with the views hereinabove expressed.